[Crim. No. 15480. In Bank. Sept. 22, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT ALOYSIOUS MASON, Defendant and Respondent.

**COUNSEL**

Edwin L. Miller, Jr., and James Don Keller, District Attorneys, Richard H. Bein and Steven B. Davis, Deputy District Attorneys, for Plaintiff and Appellant.

Neal Pereira for Defendant and Respondent.

**OPINION**

**BURKE, J.**—This case involves the legality of a search conducted pursuant to the terms of a condition of defendant's probation requiring him to submit to a search by police officers at any time without the necessity of a search warrant.

Defendant was accused of burglary with an acetylene torch (Pen. Code, § 464), receiving stolen property (Pen. Code, § 496.1), possessing restricted dangerous drugs (Health & Saf. Code, § 11910), possessing these drugs for sale (Health & Saf. Code, § 11911) and possessing marijuana (Health & Saf. Code, § 11530). At a pretrial hearing in superior court, defendant moved to suppress certain evidence on the ground that it was the product of an illegal search. (Pen. Code, § 1538.1.) The court granted the motion to suppress and, since the People had no further evidence

against defendant, dismissed the charges against him. (Pen. Code, § 1385.) The People appeal from the order of dismissal. (Pen. Code, § 1238, subd. (a)(7).)

We have concluded that the search was proper and that the order of dismissal must be set aside and the case remanded for trial.

The facts leading to defendant's arrest are as follows: In January 1970 burglars broke into the Alvarado Medical Center in San Diego and stole money, stamps, retail sales items, a radio, 4,000 hypodermic needles and over 30,000 pills and capsules, mostly barbiturates and amphetamines. At the time of the burglary, a hospital employee observed suspicious activity by two men in the parking lot; a second employee noted the license number of their car, and reported it to the police. The officers traced the car to defendant, living at 2124 Reed Street in San Diego, and discovered that defendant had registered as a narcotics offender and was on probation for possessing marijuana in 1969. The officers noted that one of the conditions of defendant's probation required him to "submit his person, place of residence, vehicle, to search and seizure at any time of the day or night, with or without a search warrant, whenever requested to do so by the Probation Officer or any law enforcement officer."

The officers went to defendant's residence and saw his car parked in front. One of the officers knocked on the door of the house, loudly identified himself and announced that he wanted to search the apartment. Defendant opened the door and an officer informed him that he had reason to believe defendant had participated in a burglary and was subject to search and seizure by court order as a condition of his probation. According to the officer, defendant replied that he was subject to such a condition. Thereupon, without giving defendant the opportunity to refuse or grant permission for a search, the officers entered the house, searched and found in the kitchen a radio which resembled the one stolen from the Medical Center. They arrested defendant, took him away, and subsequently searched defendant's car and house, uncovering further items of contraband.

The foregoing search was conducted without a warrant and, at least in part, extended in scope beyond the limits of a reasonable search incidental to arrest, as set forth in *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. The People contend, however, that the warrantless search was justified by the terms of defendant's condition of probation that he submit to a search, with or without a warrant, whenever requested by police officers. We agree that under the circumstances

in the instant case, the probation condition authorized the search of defendant's residence and car.[1]

Our analysis of the question requires a two-step approach. First, we must determine whether by the terms of the condition the officers were permitted to conduct a particular search without obtaining defendant's prior consent to that search. Second, if no prior consent was required, we must determine whether that condition constituted an unreasonable or unconstitutional invasion of defendant's rights.

Defendant contends that since the condition required him to submit to a search "whenever requested to do so," the officers should have requested permission to search, thereby affording defendant the opportunity to grant or refuse permission. To so construe the condition would, however, render it utterly meaningless. ■■ A "condition" implies a qualification or restriction; accordingly, a condition to a grant of probation contemplates some limitation upon the probationer's rights. (See *In re Bushman*, 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727].) If defendant had the right to withhold his consent to a warrantless search, the protection thereby afforded him would have been as broad as that afforded all other persons under the Fourth Amendment. ■ We conclude that the probation condition, by use of the words "with or without a search warrant," was intended to restrict defendant's right to refuse a warrantless search, and that the words "whenever requested" were added to require the officers to notify defendant before conducting a search of his house or car. Thus, a search made without defendant's knowledge would have been invalid.

We also note that to accept defendant's interpretation of the probation condition would defeat the acknowledged purposes of such a provision to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation. "With knowledge he may be subject to a search by law enforcement officers at any time, he will be less inclined to have narcotics or dangerous drugs in his possession. The purpose of an unexpected, unprovoked search of defendant is to ascertain whether he is complying with the terms of probation; to determine not only whether he disobeys the law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and

---

[1]Although it could be argued that defendant impliedly consented to the search by not objecting to it, it is unnecessary to reach that question in view of our determination that the probation condition authorized a search even in the absence of defendant's consent thereto.

his amenability to rehabilitation." (*People* v. *Kern*, 264 Cal.App.2d 962, 965 [71 Cal.Rptr. 105].)

■ Turning to the question of the validity of the condition as we have interpreted it, we are guided by the principles set forth in *In re Bushman, supra,* 1 Cal.3d 767, 776-777, as follows: "When granting probation, courts have broad discretion to impose restrictive conditions to foster rehabilitation and to protect public safety. Penal Code section 1203.1 authorizes the court to impose any 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, . . . and specifically for the reformation and rehabilitation of the probationer.' If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence. [Citations.] In such case he may challenge the legality of any proposed conditions of probation on an appeal from the judgment or on habeas corpus. [Citations.]. . . .

■ "A condition of probation imposed pursuant to Penal Code section 1203.1 is invalid if it (1) has no relationship to the crime of which the defendant is convicted, (2) relates to conduct that is not itself criminal, or (3) requires or forbids conduct that is not reasonably related to future criminality. [Citation.]"

■ It seems beyond dispute that a condition of probation which requires a prior narcotics offender to submit to a search meets the test set forth in *Bushman,* since that condition is reasonably related to the probationer's prior criminal conduct and is aimed at deterring or discovering subsequent criminal offenses.[2] Indeed, the cases have held that such a condition is reasonable and valid, being "related to [the probationer's] reformation and rehabilitation in the light of the offense of which he was convicted." (*People* v. *Kern, supra,* 264 Cal.App.2d 962, 965; see *People* v. *Fitzpatrick,* 3 Cal.App.3d 824, 827 [84 Cal.Rptr. 78]; cf. *People* v. *Osslo,* 50 Cal.2d 75, 103 [323 P.2d 397]; *People* v. *Williams,* 247 Cal. App.2d 394, 403-404 [55 Cal.Rptr. 550].)

Defendant contends that a probation condition which requires submission to a warrantless search constitutes an unreasonable invasion of his Fourth Amendment rights. We have heretofore suggested, however, that persons conditionally released to society, such as parolees, may have a reduced expectation of privacy, thereby rendering certain intrusions by

---

[2] The high recidivism rate for narcotics offenders makes the instant probation condition particularly appropriate in narcotics cases. A recent California study indicates that "Over half (53 percent) of all drug offenders arrested in 1960 were rearrested for some type of drug offense within the next five years." (State of California Department of Justice, Follow-up Study of 1960 Adult Drug Offenders (1968), p. 2.)

governmental authorities "reasonable" which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. (See *In re Martinez,* 1 Cal.3d 641, 647, fn. 6 [83 Cal.Rptr. 382, 463 P.2d 734]; cf. *People* v. *Gilkey,* 6 Cal.App.3d 183, 186-188 [85 Cal.Rptr. 642], and cases cited.) ▮ Thus, a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection.[3]

It should be kept in mind that although the scope of the search in the instant case may have exceeded the permissible limits announced in *Chimel* v. *California, supra,* 395 U.S. 752, that case acknowledged the existence of "well recognized exceptions" to the general rule requiring a warrant in order to conduct a house search. (P. 763 [23 L.Ed.2d 694].) ▮ One of those exceptions, referred to in *Katz* v. *United States,* 389 U.S. 347, 358, footnote 22 [19 L.Ed.2d 576, 586, 88 S.Ct. 507], is that "A search to which an individual consent meets Fourth Amendment requirements, *Zap* v. *United States,* 328 U.S. 624 . . . ." (See also *Vale* v. *Louisiana,* 399 U.S. 30, 35 [26 L.Ed.2d 409, 413, 90 S.Ct. 1969].) The *Zap* case is controlling here, for it upheld the validity of an *advance* waiver of Fourth Amendment rights akin to the provisions of the probation condition before us. In *Zap,* a government contractor agreed to a contract provision that " 'The accounts and records of the contractor shall be open at all times to the Government and its representatives . . . .' " Certain evidence was uncovered during a subsequent government audit conducted in the contractor's absence, which evidence led to his conviction for fraud. In response to the contractor's claim that such evidence was illegally obtained, the court stated that "the law of searches and seizures as revealed in the decisions of this Court is the product of the interplay of the Fourth and Fifth Amendments. But those rights may be waived. And when petitioner, in order to obtain the Government's business, specifically agreed to permit inspection of his accounts and records, he voluntarily waived such claim to privacy which he otherwise might have had as respects business documents related to those contracts. Whatever may be the limits of that power of inspection, they were

---

[3]We do not intend to suggest that one who has accepted such a condition to the grant of probation is thereafter barred from objecting to the unreasonable manner in which that condition is carried out by police officers. For example, a probationer who claims unlawful harassment by officers in executing a search may seek appropriate relief from the trial court, including an amendment of the order of probation. (See *People* v. *Kern, supra,* 264 Cal.App.2d 962, 965.) Defendant makes no such claim in the instant case.

not transcended here." (328 U.S. 624, 628 [90 L.Ed. 1477, 1481-1482, 66 S.Ct. 1277].)

■ Similarly, in the instant case, when defendant in order to obtain probation specifically agreed to permit at any time a warrantless search of his person, car and house, he voluntarily waived whatever claim of privacy he might otherwise have had.

Defendant contends that various policy considerations should lead us to hold that police officers may not employ "self help" when a probationer refuses to consent to a search, but that the officers should simply report the matter to the probation officer who may initiate proceedings to revoke probation. ■ Defendant points to the possibility that violence may occur when officers proceed to search a nonconsenting probationer's house, or that the rights of innocent third parties may be violated by the search. These factors are present, however, whenever officers conduct a house search, with or without a search warrant, and yet these considerations do not affect the validity of an otherwise proper search.[4] Moreover, if the only governmental remedy for a refusal to consent to a search was to seek a revocation of probation, the dual purposes of the probation condition, namely, deterrence and discovery of subsequent offenses, would be frustrated.

■ We conclude that the search conducted by the officers herein was reasonable and proper, and that the order of dismissal entered following the court's granting of defendant's motion to suppress should be vacated.

The order of dismissal is hereby vacated and the cause remanded to the Superior Court of San Diego County for further proceedings not inconsistent with this opinion.

Wright, C. J., McComb, J., Mosk, J., and Sullivan, J., concurred.

**PETERS, J.**—I dissent.

It is clear that the protection afforded by the Fourth Amendment extends to probationers. (*In re Martinez* (1970) 1 Cal.3d 641, 647, fn. 6 [83 Cal.Rptr. 382, 463 P.2d 734]; *People* v. *Rosales* (1968) 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489]; cf. *Martin* v. *United States* (4th Cir. 1950) 183 F.2d 436, 439.) The question is to what extent the state may deny or condition governmental benefits upon a waiver of Fourth Amendment rights. Our cases make clear that probationers may have a reduced right

---

[4]The possibility of violence is minimized by the advance notice provided by the probation condition itself, and the requirement of that condition (similar in effect to the entry requirements of Pen. Code, § 844) that the officers request a search before conducting it.

to Fourth Amendment protections, but that restrictions upon those rights must be narrowly drawn to meet needs for reformation and rehabilitation of the offender.

While the government is not totally barred from conditioning receipt of publicly conferred benefits upon a nonassertion of constitutional rights (*Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 505 [55 Cal.Rptr. 401, 421 P.2d 409]), it may not condition such benefits upon "any terms that it may choose to impose, . . ." (*Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18, 21 [64 Cal.Rptr. 409, 434 P.2d 961].) Rather, the general rule is set forth in *Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 271 [57 Cal.Rptr. 623, 425 P.2d 223]: "When . . . the conditions annexed to the enjoyment of a publicly conferred benefit require a waiver of rights secured by the Constitution, however well-informed and voluntary that waiver, the governmental entity seeking to impose those conditions must establish: (1) that the conditions reasonably relate to the purposes sought by the legislation which confers the benefit; (2) that the value accruing to the public from imposition of those conditions manifestly outweighs any resulting impairment of constitutional rights; and (3) that there are available no alternative means less subversive of constitutional right, narrowly drawn so as to correlate more closely with the purposes contemplated by conferring the benefit. . . ."

The *Parrish* rule is a limitation not only on legislative impairments on constitutional rights, but also on judicial and administrative impairments, and applies to persons granted conditional freedom, including parolees (*People* v. *Hernandez* (1964) 229 Cal.App.2d 143, 148 [40 Cal.Rptr. 100]) and probationers. (*In re Allen* (1969) 71 Cal.2d 388, 391 [78 Cal.Rptr. 207, 455 P.2d 143]; *In re Mannino* (1971) 14 Cal.App.3d 953, 967-969 [92 Cal.Rptr. 880].) Although courts at one time characterized conferral of public sector benefits as a matter of grace or privilege, unsusceptible to attack by those who sought the benefit, it is now well settled that unconstitutional conditions of probation may be attacked. (*In re Bushman* (1970) 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727]; cf. Van Alstyne, *The Demise of the Right-Privilege Distinction in Constitutional Law* (1968) 81 Harv.L.Rev. 1439; Note, *Parole Status and the Privilege Concept,* 1969 Duke L.J. 139.)

Of course in construing the validity of probation conditions, we recognize that courts have broad discretion to impose "*reasonable* conditions . . . to the end that justice may be done . . . and specifically for the reformation and rehabilitation of the probationer." (Pen. Code, § 1203.1, italics added; *In re Bushman, supra,* 1 Cal.3d 767, 776.) But what is rea-

sonable depends on the circumstances. Generally we have held that a condition of probation is invalid if it "requires or forbids conduct that is not reasonably related to future criminality." (*In re Bushman, supra,* 1 Cal.3d 767, 777; *People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290].) Where a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad it is *not* reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights. (*In re Mannino, supra,* 14 Cal.App.3d 953, 967-969; cf. *Parrish* v. *Civil Service Commission, supra,* 66 Cal.2d 260, 271.) "A diminution of Fourth Amendment protection . . . can be justified only to the extent actually *necessitated* by the legitimate demands of the operation of the parole process . . . ." (*In re Martinez, supra,* 1 Cal.3d 641, 647, fn. 6; italics added.) A probationer may be entitled to a diminished expectation of privacy because of the necessities of the correctional system, but his expectation may be diminished *only* to the extent necessary for his reformation and rehabilitation.

I cannot believe that such a total denial of Fourth Amendment rights is necessary or even desirable in rehabilitating a criminal offender. First, the proper level of surveillance and interference with personal rights is in part dictated by the gravity of the crime committed. Were the crime possession of beer by a 20-year-old minor (Bus. & Prof. Code, § 25658, subd. (b)), I frankly doubt whether the members of this court would consider a total denial of Fourth Amendment rights "reasonable." Yet the crime involved here—possession of marijuana—is rapidly becoming recognized as no greater a threat to the integrity of our social fabric. (See, e.g., Kaplan, Marijuana—The New Prohibition (1970); The San Francisco Committee on Crime, A Report on Non-Victim Crime in San Francisco, Part III, Dangerous Drugs and Narcotics (1971).)

Even if possession of marijuana be deemed as dangerous as possession of more dangerous drugs, the proper authority for determining whether a probationer or parolee is obeying the terms of his conditional release is the probation or parole officer. It is this individual to whom the state has entrusted the ticklish task of guiding the released offender toward a law-abiding style of life. The probation or parole officer is not just another faceless man in uniform; at best he is a trusted counselor and advisor as well as a firm but dispassionate disciplinarian. At the very least he is more aware of the necessity for surveillance in each individual case than are other law enforcement officers. The objective of deterring future criminal conduct by the probationer may in some cases justify surprise

searches by the probation officer assigned to the individual's case. I can see no justification, however, in subjecting the probationer to any search by *any* law enforcement officer at any time.

The majority appear to assert that prior consent to search by *any* law enforcement officer is necessary to the discovery of future offenses. We do not conditionally release a man because we wish to trap him in future offenses. Nor do we provide a probation officer for the purpose of being a one-man shadow of the probationer. Surely it is a proper purpose of the probation officer to ascertain whether the probationer is obeying all laws and the terms of his probation. But this function is undertaken with the goal of rehabilitating the offender. Law enforcement officers generally, on the other hand, do not have such goals in mind. It must be neither their role nor their prerogative to treat probationers as a specially suspect class of citizens. I can see no justification for extending the waiver of all Fourth Amendment rights to all law enforcement officers. I would hold the condition overbroad.

Moreover, there is no necessity for law enforcement officers to have such a privilege, given their lack of involvement in the rehabilitative process. Law enforcement officers investigating commission of a crime may properly question or search a probationer or parolee. And in considering the propriety of searches without warrants, one's status as a probationer or parolee may be of weight in giving officers probable cause to search. (*Martin* v. *United States, supra,* 183 F.2d 436, 439; White, *The Fourth Amendment Rights of Parolees and Probationers* (1969) 31 U.Pitts.L.Rev. 167, 193-197; Note, *Extending Search-and-Seizure Protection to Parolees in California* (1969) 22 Stan.L.Rev. 129, 137-140.) It is simply not necessary in any way to effective law enforcement, much less to effective probation supervision, that all law enforcement officers be given the right to search probationers or parolees at any time for any reason.

There is also good reason to believe that such all-encompassing waivers of constitutional rights are not conducive to effective rehabilitation. Treatment of the probationer like a prisoner—stripped of all control over others' knowledge of him because he is not deemed to have sufficient internal controls or knowledge of himself—simply weakens the will of the prisoner to behave responsibly because *he* thinks it right. While such treatment may be justified and necessary within prison walls, the function of probation is to strengthen independent judgment and internal controls, and to give the individual selective responsibility over his own actions. By completely denying him the right to privacy of his person, dwelling, and effects, the state thereby holds before the probationer a mirror image of

himself as a person he should not trust. "Each search . . . chips away at the [individual's] belief that he has an opportunity to grow as an individual with his own set of behavior controls. The rehabilitation process is, therefore, retarded by each such search . . . ." (Note, *supra*, 22 Stan. L.Rev. 129, 135.)

In *Rosales* and *Martinez* this court recognized that persons released conditionally into the mainstream of society have Fourth Amendment rights. We refused to permit the executive to extinguish those rights. Yet the majority now turn their back on these principles and would allow the judiciary to extinguish those rights. The majority rely on the manifest fiction that a probationer "consents" to the condition of his relief. "The rationale is not particularly appealing. It makes constitutional rights dependent upon a kind of 'contract' in which one side has all the bargaining power . . . ." (*People* v. *Hernandez, supra*, 229 Cal.App.2d 143, 148.)[1]

The majority justify the total waiver on the ground that the probationer " 'will be less inclined to have narcotics or dangerous drugs in his possession . . . . Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation.' (*People* v. *Kern*, 264 Cal.App.2d 962, 965 [71 Cal.Rptr. 105].)" Such searches measure the effectiveness of rehabilitation in the same manner that one fells a tree to measure its age. It is high time that we recognized that a person must have the freedom to be responsible if he is to become responsibly free.

I believe the condition of probation to be invalid. I would affirm the order of dismissal.

Tobriner, J., concurred.

---

[1]The fictional nature of the consent is made manifest by the majority's immediate abandonment of the rationale. If the majority really relied on a "consent" rationale, surely they would hold that refusal to consent to the search would be grounds for probation revocation but would not validate the search undertaken here.