[Crim. No. 11711. First Dist., Div. Four. May 2, 1974.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES ALLEN BYRD et al., Defendants and Appellants.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, W. Eric Collins and Sanford Svetcov, Deputy Attorneys General, for Plaintiff and Appellant.

Peter C. Haley and Alvin J. Bronstein for Defendants and Appellants.

## OPINION

**CALDECOTT, P. J.**—State of California appeals from the granting of respondents' motion to suppress pursuant to Penal Code section 1538.5 and respondents' motion to dismiss pursuant to Penal Code section 995.

On November 22, 1972, defendants-respondents James Byrd and Leigh Moser were charged by complaint with possession of marijuana for sale (Health & Saf. Code, § 11530.5), and possession of marijuana (Health & Saf. Code, § 11530). Byrd was also charged with possession of a dirk or dagger. (Pen. Code, § 12020.) The respondents entered pleas of not guilty.

On January 8, 1973, a hearing was held upon defendants' motion to suppress. On January 17, 1973, the trial court denied the motion. On January 24, 1973, defendants again moved to suppress the evidence. On January 30, 1973, the trial court granted the motion and ordered the case dismissed.

The respondents have appealed from the order of January 17, 1973.

Parole Agent Benner testified that he was assigned exclusively to supervise narcotic addict outpatient-parolees from the California Rehabilitation Center (hereafter referred to as C.R.C.). Defendant Byrd was an outpatient-parolee under Benner's supervision. Byrd and Benner had met and discussed the conditions upon which Byrd was released. Byrd told Benner that he fully understood the conditions.

Parole Agent Benner received information from the Sonoma County Sheriff's office that someone had made a buy of marijuana from Byrd and that Byrd had marijuana in his apartment. Benner obtained the assistance of three local police officers, one of whom was in uniform, and proceeded to Byrd's apartment at about 4 p.m. for the purpose of searching it to determine if Byrd "was in violation of his out-patient status." They did not have a search warrant.

Agent Benner knocked on the apartment door. Defendant Moser answered. Upon opening the door, she said, "Hello Mr. Benner." He replied, "May I come in?" and she said, "Yeah, come on in." At the same time Mr. Benner asked Ms. Moser if Byrd was there; she answered that he was not.

Benner entered the apartment first, followed by the officers. Benner told her they were going to search. Ms. Moser asked if they needed "a slip of paper." Benner replied that Byrd was on parole and had waived his rights regarding search of the apartment. The police officers identified themselves to Ms. Moser and with Benner, began to search the apartment.

During the ensuing search, Ms. Moser said, "Open the cabinet doors," and upon so doing, a large bag of marijuana was disclosed. The marijuana was seized and Ms. Moser was arrested.

### The Trial Court Erred in Suppressing the Evidence

Defendant Byrd was an outpatient from the C.R.C. Pursuant to his outpatient status, defendant signed condition 14, one of a number of conditions he signed prior to his release. Condition 14 provided: "If so determined by your Supervising Agent, you will submit to search of your person or property under your domain or control."

The evidence in question was obtained as a result of a warrantless search premised on defendant Byrd's consent obtained by his signing conditions prior to his release from C.R.C.

In *People* v. *Jasso,* 2 Cal.App.3d 955, 964 [82 Cal.Rptr. 229], and in *People* v. *Myers,* 6 Cal.3d 811 [100 Cal.Rptr. 612, 494 P.2d 684], the court specifically held that persons on outpatient release from C.R.C. are entitled to full Fourth Amendment protection.

The validity of this search cannot be premised on the consent of defendant Moser. Ms. Moser consented to the search only after Mr. Benner stated that he had a right to search the apartment because Byrd had waived his Fourth Amendment rights. The validity of the search in question can only be premised on the validity of condition 14.

Welfare and Institutions Code section 3151 provides in part that: "Upon any such certification by the director or such automatic certification, the authority may release such person in an outpatient status subject to all rules and regulations adopted by the authority, and subject to all conditions imposed by the authority, whether of general applicability or restricted to the particular person released in outpatient status, and subject to being retaken and returned to inpatient status as prescribed in such

rules, regulations, or conditions. The supervision of such persons while in an outpatient status shall be administered by the Department of Corrections. Such persons are not subject to the provisions of Penal Code Section 2600."

In *People* v. *Myers,* 6 Cal.3d 811, 818-819 [100 Cal.Rptr. 612, 494 P.2d 684], the court discussed the validity of conditions imposed by the C.R.C. authorities. The court found that conditions which necessarily infringe on the rights of outpatients can be imposed. In order to further rehabilitate, the Legislature has expressly provided that outpatient status may be granted by the Narcotic Addict Evaluation Authority subject to all rules and regulations adopted by the authority, and subject to all conditions imposed by the authority. (Welf. & Inst. Code, § 3151.) Such conditions to be valid "must reasonably relate to the program's purposes of treatment and rehabilitation." (*Supra,* at p. 818.) Such waiver must appear to have been knowingly and intelligently made. Such waiver, the court stated, "may consist of the knowing consent to Fourth Amendment infringements as a condition to achieving a status otherwise affording greater personal freedoms." (*Supra,* at p. 819; see *People* v. *Mason,* 5 Cal. 3d 759 [97 Cal.Rptr. 302, 488 P.2d 630].)[1]

In *In re Marks,* 71 Cal.2d 31 [77 Cal.Rptr. 1, 453 P.2d 451], the court upheld the statutory requirement that as a condition to outpatient status from C.R.C. custody the patient must submit himself to "periodic and surprise testing for narcotic use." Although such condition requires the waiver of a Fourth Amendment right, this condition was deemed necessary if the rehabilitation purpose of the program was not to be completely frustrated. (*Supra,* at p. 39.)

Although condition 14, herein quoted, requires the waiver of a Fourth Amendment right, such condition is necessary for the rehabilitation of the former addict. As the court stated in *In re Marks,* at page 41, when discussing "periodic and surprise testing for narcotic use" (§.3152): "Yet this court has recognized the importance of such testing in any realistic, long-term effort to rehabilitate narcotics addicts. In *In re Trummer* (1964) 60 Cal.2d 658, 661 [36 Cal.Rptr. 281, 388 P.2d 177], we observed that 'Experience with past programs of this nature has shown that a lack of followup supervision results in a high rate of relapse. [Citations.] The present "parole" (outpatient) system is designed to overcome this defect

---

[1]In *Mason,* as a condition to probation, defendant agreed to submit his person, place of residence, vehicle, to search and seizure with or without a search warrant. The court upheld the validity of the waiver.

by providing the necessary followup through counseling, *testing for narcotic use,* and immediate return for further treatment if a relapse should occur.' " The same rationale as discussed in *Marks* applies to consent search and seizure. (Cf. *People* v. *Kern,* 264 Cal.App.2d 962, 964 [71 Cal.Rptr. 105].)

Furthermore, the search of Byrd's apartment was conducted pursuant to the same C.R.C. outpatient release condition quoted in footnote 4 in *People* v. *Myers, supra,* 6 Cal.3d at page 819. Implicit in this footnote is the understanding that if the search in *Myers* had been undertaken pursuant to condition 14, the court may have affirmed the lower court's refusal to suppress the evidence.

As the trial court found, the evidence shows that defendant Byrd signed the conditions of release and acknowledged that he understood them and agreed to abide by them. The evidence further shows that all of the conditions of release were explained to defendant Byrd at or shortly after the time of his release.[2] The question posed by trial court below is whether the record must affirmatively show that the C.R.C. outpatient was specifically informed of his particular Fourth Amendment rights "so that he could form an intelligent knowledge of the rights and also make an intelligent waiver" of the rights. In essence, the court below felt that something more than mere consent was needed for a waiver of Fourth Amendment rights; that something more was needed than a mere explanation that one must submit to a search of his or her person or property. Implicit in the court's question was whether an explanation of Fourth Amendment rights analogous to the admonition required by *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], is required before a C.R.C. outpatient can consent to warrantless searches.

In *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248 [36 L.Ed.2d 854, 875, 93 S.Ct. 2041], the court held that there is no requirement that one's Fourth Amendment rights be explained prior to obtaining consent to search.[3] The court distinguished the *Miranda* situation involving custodial

---

[2]Respondents do not contend that Byrd did not "knowingly consent" to his Fourth Amendment waiver.

[3]"Our decision today is a narrow one. We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Because the California courts fol-

interrogation from the Fourth Amendment situation. The court noted at pages 241-242 [36 L.Ed.2d at page 871] that: "There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.

"A strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial. Any trial conducted in derogation of that model leaves open the possibility that the trial reached an unfair result precisely because all the protections specified in the Constitution were not provided. . . .

"The protections of the Fourth Amendment are of a wholly different order, and have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial."

The Supreme Court in *Bustamonte* approved the California rules allowing consensual searches. In *People* v. *Duren,* 9 Cal.3d 218, 241 [107 Cal.Rptr. 157, 507 P.2d 1365], the court said that "California does not require a police warning as a prior condition for a valid consent to search." (See *People* v. *Strawder,* 34 Cal.App.3d 370, 376-377 [108 Cal.Rptr. 901].)

The same reasoning relied on by the court in *Bustamonte* applies to the case at bar. It is clear from the condition as written that the patient is waiving a right to be free from warrantless search and seizure. Furthermore, it should be noted that in probation cases, where the defendant, as a condition to release, waives his Fourth Amendment right, there is no mandate that the court explain every nuance of every right which the defendant is waiving.

It should be noted that in *People* v. *Myers, supra,* 6 Cal.3d 811, at pages 818-819, the California Supreme Court, relying on *Johnson* v. *Zerbst,*[4] 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357], stated: "We deal here with important, constitutionally protected rights to be free

---

lowed these principles in affirming the respondent's conviction, and because the Court of Appeals for the Ninth Circuit in remanding for an evidentiary hearing required more, its judgment must be reversed." (*Supra,* at pp. 248-249 [36 L.Ed.2d at p. 875].)

[4]*Miranda* v. *Arizona, supra,* at page 475 [16 L.Ed.2d at page 724], relied on *Johnson* v. *Zerbst* for its discussion on waiver during in-custody interrogation.

from unreasonable searches and seizures., Such rights, where reasonably related to the achievement of a proper purpose, may be waived as a condition to gaining some other advantage, but the waiver must appear of record to have been knowingly and intelligently made. (See *Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357].) A proper waiver may consist of the knowing consent to Fourth Amendment infringements as a condition to achieving a status otherwise affording greater personal freedoms. (*People* v. *Mason* (1971) 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630].)"

It is not clear in *Myers* whether the court meant that each C.R.C. outpatient must be informed of his or her specific Fourth Amendment right before a waiver of Fourth Amendment rights will be valid. In *Schneckloth* v. *Bustamonte,* the court indicated that the standards of *Johnson* v. *Zerbst* were inapplicable to the waiver of one's Fourth Amendment rights. (*Supra,* at pp. 240-241 [36 L.Ed.2d at pp. 870-871].) We therefore conclude that a C.R.C. patient need not be specifically informed of what specific constitutional rights he is waiving. It is enough that he knowingly consents to and voluntarily signs the condition form.

Waiver of constitutional rights in advance as a condition to release from C.R.C., or as a condition to probation or as a condition to acquiring certain privileges is necessarily coercive but such exceptions to the Fourth Amendment requirements have long been upheld. In *Zap* v. *United States,* 328 U.S. 624 [90 L.Ed. 1477, 66 S.Ct. 1277],[5] the Supreme Court upheld the validity of an advance waiver of Fourth Amendment rights akin to the conditions before us.

In *People* v. *Mason, supra,* 5 Cal.3d 759, the California Supreme Court relied on *Zap* for its holding that appellant's waiver of Fourth Amendment rights was a proper condition to probation. "Similarly, in the instant case, when defendant in order to obtain probation specifically agreed to permit at any time a warrantless search of his person, car and house, he voluntarily waived whatever claim of privacy he might otherwise have had." (*People* v. *Mason, supra,* at p. 766.)

■ The trial court erred in its construction of the language of the search condition. The outpatient is subject to searches of his person or property whenever his supervising parole agent determines. The trial court suggested that the condition as written was improper because the phrase

---

[5]Cited with approval in *People* v. *Mason,* 5 Cal.3d 759, 765 [97 Cal.Rptr. 302, 488 P.2d 630], and *Schneckloth* v. *Bustamonte, supra,* at pages 222, 233 [36 L.Ed.2d at pages 860, 866].

"with or without a warrant" was absent. The condition requires that the outpatient submit to any search by the agent. Subsumed in such a consent to search is the implication that such searches could be either with or without a warrant. If the agent procures a warrant, consent to search is meaningless.

Respondents argue that the parole agent violated the terms of the search condition because (1) respondent Byrd was not present at the time of the search and (2) the search was conducted not only by the supervising agent, but also by police officers.

■ Respondents argue that the word "submit" in condition 14 implies that defendant must be present at the time of the search of his property. Respondents' personification of the word "submit" is erroneous. "Submit" simply means "to yield to the will or the authority of" or "to present to make available for use or study of." (Webster's Third New Internat. Dict.)

The language in condition 14 that "you will submit to a search of your . . . property," simply means that you consent to have your property searched. It does not imply presence of the outpatient when his or her property is searched

In *People* v. *Mason, supra,* one of the conditions of defendant's probation required him to " 'submit his person, place of residence, vehicle, to search and seizure at any time of the day or night, with or without a search warrant, *whenever requested to do* so by the Probation Officer or any law enforcement officer.' " (*Supra,* at p. 762.) (Italics added.) The Supreme Court interpreted this language "whenever requested" to require that a search be made with defendant's knowledge. These words were not included in condition 14. Thus condition 14 was not violated when Agent Benner searched Byrd's apartment in Byrd's absence.

Respondents cite *Colonnade Corp.* v. *United States,* 397 U.S. 72 [25 L.Ed.2d 60, 90 S.Ct. 774], for their assertion that defendants' presence must be a condition precedent for consensual warrantless search. The case dealt with the statutory right of treasury agents to enter and inspect the premises of retail dealers in liquor to discover violation of the liquor laws. Congress provided that the Secretary of Treasury could delegate his broad authority to enter and inspect the premises of retail liquor dealers. The Supreme Court held that if the retail dealer refused to consent to a search, the agents could not break into the premises without further congressional guidelines for reasonable search and seizure. In the present case, the trial court found that there was no "breaking in" or refusal to allow the probation officer to enter.

■ Respondents further argue that Agent Benner violated condition 14 because he conducted the search of respondent's property with police officers rather than conducting the search alone. Appellant's argument is without merit.

In *People* v. *Kanos,* 14 Cal.App.3d 642, 649 [92 Cal.Rptr. 614], the Court of Appeal held that the mere fact that the agents were accompanied by police officers does not detract from the legality of the search.

### *The Respondents' Appeal Is Not Properly Before This Court*

■ Respondents seek to appeal from the original denial of their Penal Code section 1538.5 motion though the court eventually granted their section 1538.5 motion.

There is no legal basis for such an appeal by the defendants.

Penal Code sections 1538.5, subd. (i)[6] and 1538.5, subd. (m)[7] are the exclusive source of authority for review of defendant's denial of his Penal Code section 1538.5 motion to suppress. These sections provide relief in only two situations: (1) after a denial of the motion to suppress in the superior court, (2) appeal from a conviction following a trial.

Neither situation is applicable here because respondents' motion to suppress was granted.

---

[6]"If the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing, or if the property or evidence relates to a felony offense initiated by indictment, the defendant shall have the right to renew or make the motion in the superior court at a special hearing relating to the validity of the search or seizure which shall be heard prior to trial and at least 10 days after notice to the people unless the people are willing to waive a portion of this time. The defendant shall have the right to litigate the validity of a search or seizure de novo on the basis of the evidence presented at a special hearing. After the special hearing is held in the superior court, any review thereafter desired by the defendant prior to trial shall be by means of an extraordinary writ of mandate or prohibition filed within 30 days after the denial of his motion at the special hearing."

[7]"The proceedings provided for in this section, Section 995, Section 1238, and Section 1466 shall constitute the sole and exclusive remedies prior to conviction to test the unreasonableness of a search or seizure where the person making the motion for the return of property or the suppression of evidence is a defendant in a criminal case and the property or thing has been offered or will be offered as evidence against him. A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty. Such review on appeal may be obtained by the defendant providing that at some stage of the proceedings prior to conviction he has moved for the return of property or the suppression of the evidence."

Penal Code section 1237 is the exclusive source of authority for appeals by the defendants. That section contemplates defense appeals in only two situations: (1) "from a final judgment of conviction" and (2) "from any order made after judgment, affecting the substantial rights of the party."

Respondents attempt to appeal from an order made prior to a judgment of dismissal. Such an appeal is not contemplated under the statute. Furthermore, even if an appeal were proper, there is no merit in respondents' contention that Agent Benner's entry of their apartment was accomplished under circumstances which violate the notice provisions of Penal Code sections 844 and 1531. The trial court found that the evidence showed that Ms. Moser asked Mr. Benner to come in. Sections 844 and 1531 are inapplicable under such circumstances. "Since the officers' entry here was consented to by persons present inside the house, the section does not apply." (*Mann* v. *Superior Court,* 3 Cal.3d 1, 9 [88 Cal.Rptr. 380, 472 P.2d 468]; *People* v. *Ramirez,* 4 Cal.App.3d 154, 157 [84 Cal.Rptr. 104].)

The purported appeal of defendants from the order of January 17, 1973, suppressing evidence is dismissed.

The order dismissing the information is reversed with directions to vacate the order of January 30, 1973, suppressing evidence.

Rattigan, J., and Christian, J., concurred.

The petition of the defendants and appellants for a hearing by the Supreme Court was denied June 26, 1974.