[Crim. No. 3216. Fifth Dist. Oct. 16, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK JESSE GUERRERO, Defendant and Appellant.

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE VALDEZ GUERRERO, Defendant and Appellant.

COUNSEL

Paul Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Gary S. Goodpaster and Ezra Hendon, Chief Assistant State Public Defenders, Richard E. Shapiro and Richard L. Phillips, Deputy State Public Defenders, and Steve L. Bedient, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel

Carey and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GINSBURG, J.**[*]—Appellants, Frank Jesse Guerrero and George Valdez Guerrero, were found guilty of first degree robbery after a joint trial by the court without a jury. Appellant Frank Guerrero was found to have used a deadly weapon during the commission of the offense. Both have appealed, and each is represented by separate counsel. The grounds of each appeal and the issues raised are common to both, except where otherwise hereinafter indicated.

### THE PRIMARY ISSUE

The determination of these appeals primarily involves an examination into the permissible scope of warrantless searches conducted pursuant to consents to search given in advance as a condition of release from custody by (1) patients of the California Rehabilitation Center and (2) prisoners on probation. During the course of the trial motions under section 1538.5 of the Penal Code to suppress evidence obtained as a result of certain searches of the residences of appellants were heard and denied. The substantive question presented is whether the searches were lawful and their products properly admissible into evidence.

### FACTS

Before discussing the circumstances of each of the searches here in question we review the events pertinent to all.

On the evening of January 24, 1977, two men entered the A & H Liquor store in Merced wearing yellow hoods or masks and blue jean pants and jackets; one wore no shoes. One was holding a shotgun and ordered the two liquor store clerks into the back of the store while the other man went to the store's cash register and took the money out of it. Thereafter both men left the store.

---

[*]Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

Patrolman Dossetti of the Merced Police Department, on patrol in the vicinity, saw two people come hurriedly out of the store wearing yellow masks; he observed that one was carrying a shotgun. He saw them turn into an alley and followed them in his patrol car. Seeing the lights of a parked car come on and the car begin to move out of the alley, Dossetti followed and stopped it. The car was driven by one Manuel Souza, who was alone in it. The officer observed a shotgun shell lying on the front floorboard and a pair of brown woven leather sandals on the left rear passenger floorboard. Souza was arrested and later he was questioned about the robbery.

On January 26, after being told that any charges pending against him would be dismissed if he acted as a witness, Souza made a statement to Detective Downey confessing to his part in the robbery and also implicating appellants in it.

At the trial Souza testified that at about 8 p.m. on the evening of the robbery he had gone to the Merced County jail to meet his parole officer, James Wetmore, to be tested for narcotics use. While there, he met appellants, who were also there to be tested for narcotics use. They arranged to meet later in the evening, and ultimately they agreed to rob the liquor store. They then drove to appellant George Guerrero's residence and there made two masks out of a yellow T-shirt. On the way to the liquor store they agreed that Souza would park the car in the alley next to the store and wait, while appellants would enter the store. Shortly after appellants left the car, they came back running. Appellant George Guerrero opened the car door and advised Souza that the police were there. Souza immediately started his car, turned on the headlights, and was then observed, followed, and stopped by Patrolman Dossetti.

Commencing the day after the robbery, three searches of appellants' residences were conducted.

(1) *The Searches of Appellant George Guerrero's Residence.*

Appellant George Guerrero was an outpatient of the California Rehabilitation Center. An agreement for release, which he had signed, included condition 14, a consent for search, which stated: "You shall submit to a search of your person, your residence and any of your property under your control by your agent, any agent of the Department of Corrections or law enforcement officer."

On January 25, the day after the robbery, George's parole agent, James Wetmore, was informed that Souza was in custody and that there had been a robbery at the liquor store the night before. Remembering that he had seen Souza with appellants the night before when he was conducting narcotics use tests, Wetmore contacted Detective Downey, the investigating officer on the robbery. At about 10 a.m. the next day they made a search of George's residence. Agent Wetmore testified that although the latest test for which he had results—taken early in January—showed that George had not been using narcotics, an earlier test taken in December had shown the presence of narcotics, and that checking for narcotics was the purpose of the search. Contraband pills, part of a "hype kit," some empty balloons and Souza's wallet were discovered in this search. Although not introduced into evidence at the trial, the presence of Souza's wallet was part of the reason for subsequent searches. The legality of this first search is therefore a necessary subject of inquiry.

Later that day Agent Wetmore was informed by Detective Downey of Souza's statement implicating both appellants. Wetmore decided based upon this information, coupled with the finding of Souza's wallet and the contraband pills and materials in the first search, to search George's residence again. At about 5:30 p.m. that same day, accompanied by Detective Downey, he searched George's residence for the second time. In this search the officers found part of an athletic shirt, later identified as the one from which appellants had cut the masks worn in the robbery. This shirt was received in evidence at the trial.

Agent Wetmore testified that this second search, like the first, was made at his request and that both searches were parole searches to seek evidence of a possible parole violation.

(2) *The Search of Appellant Frank Guerrero's Residence.*

Appellant Frank Guerrero was on probation resulting from a conviction of second degree burglary, a misdemeanor. Condition 10 of the probation was that he "submit his person, vehicle, place of residence or any other belongings to search and seizure without a warrant at anytime day or night by any Probation Officer and/or peace officer."

Shortly after the second search of appellant George Guerrero's residence, a search was made of the residence of appellant Frank Guerrero. This search, conducted by Probation Officer Carlisle accompanied by police officers, was requested by appellant Frank Guerrero's

probation officer, Otto Hewitt. The announced purpose was to check for any noncompliance with the order of probation. In carrying out the search Probation Officer Carlisle as well as the police officers looked specifically for evidence that might implicate appellant Frank Guerrero in the liquor store robbery and thus show a violation of terms of his probation. The search produced some articles of clothing which were identified and received in evidence at the trial as apparel Frank Guerrero was wearing at the time of the robbery.

## DISCUSSION

We first review the law governing warrantless searches under the authority of consent to search conditions of parole or probation.

(1) *Conditions of Search of CRC Outpatients.* .

■ Although a commitment to the California Rehabilitation Center under Welfare and Institutions Code section 3050 et seq. is deemed nonpenal and civil in character, whether any particular rule of criminal practice should be applied depends upon a consideration of the relationship of the policy underlying the rule to the proceeding. (*People* v. *Myers* (1972) 6 Cal.3d 811, 815-817 [100 Cal.Rptr. 612, 494 P.2d 684].) "While the program is partly for the protection of the addict, its primary purpose is 'the prevention of contamination of others and the protection of the public.' (Welf. & Inst. Code, § 3000 . . . .)"[1] (*People* v. *Marquez* (1966) 245 Cal.App.2d 253, 257 [53 Cal.Rptr. 854].)

In *People* v. *Myers, supra,* 6 Cal.3d 811, the Supreme Court held that the defendant's status as an outpatient from CRC did not of itself authorize a warrantless search of his home. The court pointed out that there was no waiver of the right to be free from otherwise unreasonable searches in order to be granted outpatient status (p. 819) and specifically called attention to the fact that since the release of the defendant the Narcotic Addict Evaluation Authority had added condition 14, the consent to search here in question, to its standard conditions for release to outpatient status. (Fn. 4, p. 819.)

---

[1] Welfare and Institutions Code section 3000 provides in part as follows: "It is the intent of the Legislature that persons addicted to narcotics, or who by reason of repeated use of narcotics are in imminent danger of becoming addicted, shall be treated for such condition and its underlying causes, and that *such treatment shall be carried out for nonpunitive purposes not only for the protection of the addict, or person in imminent danger of addiction, against himself, but also for the prevention of contamination of others and the protection of the public. . . .*" (Italics added.)

Other cases since *Myers* have considered the effect of a signed waiver of Fourth Amendment rights by a CRC parolee and have applied the rules of criminal practice. In *People* v. *Byrd* (1974) 38 Cal.App.3d 941 [113 Cal.Rptr. 777] the court rejected an attack upon the validity of the release and held that it was sufficient to authorize a search without a warrant. The court stated: "Furthermore, the search of Byrd's apartment was conducted pursuant to the same C.R.C. outpatient release condition quoted in footnote 4 in *People* v. *Myers, supra,* 6 Cal.3d at page 819. Implicit in this footnote is the understanding that if the search in *Myers* had been undertaken pursuant to condition 14, the court may have affirmed the lower court's refusal to suppress the evidence." (At p. 946.)

Later cases reach a similar result. *Frederick* v. *Justice Court* (1975) 47 Cal.App.3d 687 [121 Cal.Rptr. 118] recognized the validity of a search and seizure clause as a CRC parole condition while holding it invalid as a condition of diversion under Penal Code section 1000 et seq. In *People* v. *Howard* (1978) 79 Cal.App.3d 46 [143 Cal.Rptr. 342], the police received information that defendant, a CRC parolee who had agreed to submit to search, was trafficking in narcotics. They obtained permission from his parole officer to search his apartment and recovered some stolen items on which the prosecution was based. In affirming the denial of a motion to suppress this evidence, the court, relying on *People* v. *Byrd, supra,* 38 Cal.App.3d 941, stated that a parolee from CRC stands in the same position with respect to conditions imposing liability to search as does a parolee from state prison (fn. 1, p. 49).

■ We conclude that any conditions or restrictions on a CRC outpatient's constitutional rights must meet the test of being reasonably related to the policy underlying the commitment program, which includes not only the protection of the addict but also the protection of the public; that condition 14, permitting search and seizure by parole and law enforcement officers, meets this test; and that the rules of criminal practice apply to such a clause with the result that the outpatient from CRC stands in the same position with respect to a release to search condition as does a parolee from state prison or a probationer from local penal custody who has consented to such a clause.

(2) *Conditions of Search of Probationers.*

We next consider probationers and parolees whose status results from criminal convictions. ■ We find that the mere fact that an individual

is on probation does not justify a search by peace officers other than parole agents. In *People* v. *Coffman* (1969) 2 Cal.App.3d 681, 688 [82 Cal.Rptr. 782], where there was no mention or consideration of a consent to search, the court held that the parole officer's mere presence did not validate an otherwise illegal search by police.

But a waiver or condition of search is given effect. In *People* v. *Mason* (1971) 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630], a burglary prosecution, the police traced an automobile used in a burglary to the defendant's residence. Finding that the defendant was on probation as a result of a conviction for possession of marijuana and that a term of his probation required him to " 'submit his person, place of residence, vehicle, to search and seizure at any time of the day or night, with or without a search warrant, whenever requested to do so by the Probation Officer or any law enforcement officer,' " (p. 762) the police searched the defendant's residence and found the stolen property. In holding that the product of the warrantless search was admissible in evidence, the Supreme Court upheld the legality of the consent to search provision based on the broad discretion courts have to impose restrictive conditions in granting probation to foster rehabilitation and to protect public property. But there must be reasonable grounds for imposing the condition. In *People* v. *Keller* (1978) 76 Cal.App.3d 827, 838-840 [143 Cal.Rptr. 184], the condition was held unreasonable and therefore invalid where it was imposed as a condition of probation granted after a conviction of petty theft involving a 49-cent ballpoint pen. The court said, "The probation condition here imposed, the waiver of a precious constitutional right resting solely upon plea to theft of a 49-cent ballpoint pen reaches for parallel, the use of a Mack truck to crush a gnat. In this further sense the condition cannot be deemed reasonable." (76 Cal.App.3d at p. 840.)

Where the condition is valid, there are still limitations on both parole and peace officers in making warrantless searches. The rule is that there must be some conduct reasonably suggestive of criminal activity to "trigger" the search. In *People* v. *Icenogle* (1977) 71 Cal.App.3d 576, 583-585 [139 Cal.Rptr. 637], police officers searched defendant's house after receiving information that her live-in boyfriend, a parolee subject to a search and seizure condition, was dealing in heroin and after observing suspicious actions. The Court of Appeal held that the search was a

reasonable application of the consent to search by a law enforcement officer.

Reasonable cause under a consent-to-search clause is different from and less than "probable cause" for the issuance of a warrant; in the context of the probation order it has been held to refer only to circumstances indicating that in connection with effective probation supervision a search is advisable. (*People* v. *Kasinger* (1976) 57 Cal.App.3d 975, 978 [129 Cal.Rptr. 483].)

In *People* v. *Garcia* (1975) 44 Cal.App.3d 1029, 1032 [119 Cal.Rptr. 128], the court held that a search under the authority of a probation condition must be made under conditions which would reasonably lead one to suspect criminal activity may be taking place in the house. There the search was reasonably triggered, the court reasoned, when the officers went to serve a warrant on an occupant of the house where the defendant-probationer resided and found one of six men assembled there trying to escape out of a window. It was pointed out that the police need not have sufficient cause to arrest, but they cannot act arbitrarily or capriciously or harass the occupant; they had not so acted there.

It thus appears that a consent-to-search clause, to be a valid condition of probation or parole, must bear a reasonable relationship to the crime committed and the protection of the public; such a clause is strictly construed; there must be a reasonable cause which may be less than the grounds for an arrest or search warrant to "trigger" the search; and such a search may not be for purposes of harassment or merely because the subject happens to be a probationer or parolee, but must be based on a reasonable suspicion of criminal activity.

(3) *The Extent of Appellate Review.*

■ Finally, with regard to all searches under consent to search clauses, we observe that in considering motions to suppress on appeal this court must, as a reviewing court, resolve all factual conflicts in the manner most favorable to the trial judge's determination, looking to see only if there is substantial evidence to support the finding of the trier of fact. (*People* v. *James* (1977) 19 Cal.3d 99, 107 [137 Cal.Rptr. 447, 561 P.2d 1135]; *People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].)

CONCLUSION

(1) *The Searches of George Guerrero's Residence.*

Under the above authorities, the imposition of condition 14, the consent to search clause, has been held to be a valid condition for outpatient release in a CRC commitment.

■    In the case of the first search, Parole Agent Wetmore had in mind the December test of George showing he was using narcotics and his suspicious association the night before with other parolees. This was sufficient evidence to support the finding of the trial judge that the search was justified.

In considering the second search of George's residence, the parole agent knew of the presence of narcotic contraband therein earlier that day. Additionally, he knew of the statement of Souza implicating George in a robbery the night before, had found Souza's wallet in George's residence, and had seen George in the company of the alleged accomplice shortly before the robbery. The trial judge indicated that he believed Agent Wetmore's testimony that Wetmore was interested in determining whether George was "going back into narcotics." The trial judge obviously did not believe that the parole agent was merely a "front" for a police search.

Coupled with the objective of a CRC commitment to "protect the public," there was sufficient evidence of reasonable cause to "trigger" the search to support the decision of the trial judge that the evidence thereby obtained was obtained from a lawful search and thus admissible.

(2) *The Search of Appellant Frank Guerrero's Residence.*

■    We first conclude that the imposition of a consent-to-search clause may be a valid condition of release on probation resultant from a burglary conviction, be it either a felony or misdemeanor. Imposition of such a condition is within the discretion vested in the trial court in fixing the terms of probation under Penal Code section 1203.1.

■    Furthermore, there can be no question as to the reasonableness of the search of appellant Frank Guerrero's residence. The search was "triggered" by Agent Wetmore's observation of Frank the night before which tended to confirm Souza's implication of him in the robbery, and

by the earlier evidence found in the searches of George's residence. There was thus reasonable cause to believe Frank was violating the terms of his probation; it would be difficult indeed to conceive of a more basic violation of probationary terms than engaging in criminal activity.

We therefore hold that evidence obtained as a result of the search of appellant Frank Guerrero's residence was properly admitted at the trial, and the motions under Penal Code section 1538.5 properly denied.

Other contentions of the appellants are without merit, except the contention of appellant Frank Guerrero that there was insufficient evidence to support the finding of the court that he used a firearm during the commission of the robbery. With this contention counsel for the respondent agrees, and our own examination of the record fails to disclose any substantial evidence to support this finding.

The finding that appellant Frank Jesse Guerrero used a firearm in the commission of the offense is stricken from the judgment; the trial court is directed to amend the abstract of judgment to conform to this order and prepare and furnish a new abstract of judgment to the Department of Corrections. The Department of Corrections is ordered to give effect to this order. As so amended, the judgment in his case is affirmed.

The judgment in appellant George Valdez Guerrero's case is affirmed.

Hopper, Acting P. J., and Meyers, J.,* concurred.

A petition for a rehearing was denied November 14, 1978, and appellants' petition for a hearing by the Supreme Court was denied December 13, 1978.

---

*Assigned by the Chairperson of the Judicial Council.