[Civ. No. 18710. Third Dist. Sept. 17, 1980.]

ABRAHAM HERNANDEZ et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Michael A. Delia, Jr., in pro per., Ernest F. Winters, Katherine Mader, James V. de la Vergne and Kenneth M. Wells, Public Defender, for Petitioners.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Gary A. Binkerd, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**PUGLIA, P. J.**—Abraham Hernandez seeks pretrial appellate review of orders denying the suppression of certain evidence. (Pen. Code,

§ 1538.5, subd. (i).) He faces a four-count indictment charging him and codefendants Sosa, Delia, and Juan Hernandez with conspiracy to commit murder (Pen. Code, § 182, subd. 1) and murder (Pen. Code, § 187) of Ellen Delia, the estranged wife of codefendant Michael Delia. The codefendants have joined in the present petition. (Hereafter Abraham Hernandez will be referred to as defendant or Hernandez and his codefendants in the underlying prosecution will be referred to as defendants.) We have issued an alternative writ of mandate.

I.

On February 18, 1977, the body of Ellen Delia was found in the vicinity of the Sacramento Metropolitan Airport; she had been shot, execution-style, the previous evening. There were no personal belongings or identification of Ellen at the murder scene.

On February 19, Sacramento Police Officer Steed, who was investigating the murder, telephoned defendant Delia, the victim's husband. Defendant Delia told Steed that he had last seen his wife when he took her to the Los Angeles International Airport on February 17 and that she had in her possession at the time a purse containing a number of credit cards, including one issued by Texaco. The absence of credit cards on Ellen Delia's body suggested to Steed that the killer had taken them.

Between February 19 and 21, Sacramento police officers began investigating certain airline credit cards which defendant Delia had indicated his wife had possessed, but no action was taken at this time with respect to the Texaco credit card.

Meanwhile on the evening of February 20, officers of the Monterey Park Police Department stopped a vehicle occupied by defendant Sosa and Armando Varela. A gun was found in the passenger compartment of the car; as a consequence the two occupants were arrested and the vehicle impounded. An impound search on February 21 uncovered a customer's sales slip (soft copy) from a Texaco credit card transaction. This sales slip showed that a Texaco credit card in the name of M. A. Delia had been used to purchase gasoline from Ron Mahoney's Texaco station in Sacramento on February 17, the day of the homicide. The gasoline was purchased for a vehicle with California license number 926 MUR.

The trial court found the detention and arrest of defendant Sosa and Varela by Monterey Park police officers to be illegal. Accordingly, the trial court suppressed as evidence the soft copy of the sales slip as the fruit of an illegal arrest. The People do not contest this ruling.

On February 21, Officer Steed went to Los Angeles to develop clues regarding the Ellen Delia murder. Sometime after his arrival, he received the soft copy of the Texaco credit card transaction from Sergeant Helvin of the Los Angeles Police Department. Helvin had participated in the impound search of the vehicle occupied by Sosa and Varela. Steed then contacted the Sacramento Police Department and requested that an officer obtain Texaco's copy (hard copy) of the sales slip from the credit card transaction.

On February 22, Steed again talked to defendant Delia at his home in Alhambra. At this time, Delia supplied Steed with the account number of the Texaco credit card and said the card was issued to M. A. Delia.

Also on February 22, Sacramento Police Officer Padovan went to Ron Mahoney's Texaco station to locate the hard copy of the sales slip of the February 17 purchase. Padovan was unable to recover the hard copy because it had already been sent to the Texaco distributor. On February 23, Padovan recovered the hard copy from the Texaco regional distributor. Padovan had neither a search warrant nor a subpoena duces tecum.

On March 5, Steed interviewed Edward Gonzales, who was incarcerated in the Los Angeles jail on unrelated charges. Gonzales had previously decided to cooperate with law enforcement regarding his knowledge of and participation in criminal activity, including the Ellen Delia homicide.

The trial court ordered suppressed the information supplied by Gonzales, having determined it was the tainted product of the illegal detention and arrest of Sosa and Varela. In an opinion filed contemporaneously herewith (*People* v. *Superior Court* (*Sosa*)█ (Cal.App.)), this court denied the People's petition for peremptory writ of mandate to vacate the trial court's ruling.

In the interview, Gonzales related that defendants Sosa and Abraham Hernandez and his wife, Sally Hernandez, had purchased gasoline

for Hernandez' Volkswagen on the morning of February 17, the day of the murder, by using defendant Delia's Texaco credit card. Gonzales said that prior to the homicide he and defendant Sosa had used the credit card several times in their travels throughout the state.

Because Steed wanted to corroborate Gonzales' account of the several Texaco credit card transactions before and after Ellen Delia's murder, he served a subpoena duces tecum on Texaco on May 25, 1977. The subpoena was directed to all transactions using the Delia Texaco card from January 20, 1977, to February 24, 1977.

On June 14, Steed received the subpoenaed records from Texaco and delivered them in a sealed condition to the Sacramento County Grand Jury. These records did not contain evidence of the February 17 credit card transaction, however, because Padovan had already received Texaco's hard copy from that transaction.

Defendant Hernandez moved to suppress the hard copy of the February 17th Texaco sales slip contending it was obtained from the Texaco distributor without a valid search warrant and without defendant Delia's consent in violation of Delia's constitutional rights. In opposition, the People contended that the hard copy inevitably would have been discovered independent of the illegality of the vehicle stop and impound search on February 20 and 21 respectively. (*People v. Superior Court (Tunch)* (1978) 80 Cal.App.3d 665 [145 Cal.Rptr. 795].)

The trial court found "...there is a reasonably strong probability that the [hard copy] would have been discovered by legal means" independent of the illegality which began with the vehicle stop; accordingly, the court denied defendant's motion to suppress the hard copy. The court emphasized that an investigation by Sacramento police independent of the unlawful conduct by the Monterey Park officers had begun and the police were aware of the Texaco credit card before the illegal vehicle stop.

The inevitable discovery doctrine applies only to evidence obtained as the indirect product, or fruit, of other evidence illegally seized. (*People v. Superior Court (Tunch), supra,* 80 Cal.App.3d at pp. 672-673.) It is inapplicable to a situation where the challenged evidence is itself illegally obtained apart from any taint imputed to it from its connection with antecedent illegal police conduct, here, the vehicle stop.

■ In this proceeding, defendant's primary attack on the Texaco hard copy is based on *People* v. *Blair* (1979) 25 Cal.3d 640 [159 Cal. Rptr. 818, 602 P.2d 738], a decision rendered after the acquisition of the challenged evidence. Thus defendant contends that the police seizure of the Texaco credit card record without lawful process in and of itself violated defendant Delia's constitutional guarantee against unreasonable search and seizure (Cal. Const., art. I, § 13).

Applying the rationale of *Burrows* v. *Superior Court* (1974) 13 Cal. 3d 238 [118 Cal.Rptr. 166, 529 P.2d 590], *Blair* holds that a credit card holder has a reasonable expectation of privacy in information in the hands of the issuer concerning his credit card charges; official seizure of this information without a prior judicial determination of entitlement thereto constitutes an unconstitutional invasion of the holder's right guaranteed by California Constitution, article I, section 13 to be secure against unreasonable searches and seizures. (*People* v. *Blair, supra*, 25 Cal.3d at pp. 646, 651-652.) (Presumably a warrant is not needed as in all other cases where there is consent or exigent circumstances exist.)

*Blair* does not address the question whether the rule it announces is to be applied retroactively. If the *Blair* holding is a straightforward application of existing precedent, no issue of retroactivity arises and *Blair* clearly controls this case. We conclude, however, that *Blair* does expound a new legal principle thus requiring the application thereto of settled policy criteria to determine whether *Blair* should operate prospectively only or retroactively as well.

The seminal case of *Burrows* v. *Superior Court, supra*, turned on whether a bank customer entertains "a reasonable expectation of privacy" in records of his banking transactions in the hands of the bank. *Blair* applies the same test to the credit card holder. However, the fact that the identical test is applied to resolve each case is not dispositive of the issue of retroactivity. "There is a vast array of possible circumstances in which a person may or may not have a reasonable expectation of privacy. These questions cannot be deemed to be settled merely because the general framework for evaluating them has been established." (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 10, fn. 6 [136 Cal. Rptr. 409, 559 P.2d 1028].) Indeed when the highest court in California is convened solemnly to decide "whether the rationale of *Burrows* applies to copies of bills charged to a credit card used by defendant..." (*Blair, supra*, 25 Cal.3d at p. 646) the assumption that the Sacramento

police should have anticipated the decision and its applicability to the present facts as a test of their good faith is totally unrealistic. One need not disagree with the *Blair* holding to appreciate that the similarities between the records of banks and credit card companies in terms of the privacy interests therein of the customers of such institutions are not so palpably congruent that a rule fashioned to protect the privacy interest in one situation will necessarily be applied to the other.

The criteria used to determine whether a new rule is to be applied retroactively have been set forth elsewhere in the reported decisions and will not be repeated here. (*People v. Kaanehe, supra,* at p. 10; *In re Johnson* (1970) 3 Cal.3d 404, 410–413 [83 Cal.Rptr. 465]. It is sufficient to point out that the application of exclusionary rules implementing the constitutional prohibition against unreasonable searches and seizures is not necessary to ensure the reliability of the fact finding process; the purpose underlying such exclusionary rules is to deter illegal police activity; retrospective application of such rules obviously does not serve that purpose (*People v. Kaanehe, supra,* 19 Cal.3d at p. 10; *In re Johnson, supra,* 3 Cal. 3d at p.412; *People v. Superior Court* (*Harris*) (1979) 100 Cal.App.3d 386, 389 [160 Cal.Rptr. 880]. Moreover, the Sacramento police investigation was independent of that of the Monterey Park Police Department and the officers conducting it acted in the reasonable good faith belief that the Texaco records were lawfully obtained. Therefore the imperative of judicial integrity will not be violated by introduction of the Texaco credit card evidence at trial. (*United States v. Peltier* (1975) 422 U.S. 531, 536–539 [45 L. Ed. 2d 374, 380–382, 95 S.Ct. 2313].)

In summary, we conclude that the *Blair* holding does not operate retroactively and therefore defendant Delia had no legally cognizable privacy interest in the Texaco credit card records.

Moreover, at the time the Sacramento police obtained the hard copy of the Texaco credit card transaction, defendant Delia, the holder of the card, without apparent reservation, had furnished information to the police concerning the card. However the conduct of the police may be viewed in hindsight, the responsible officers can hardly be faulted if they did not consider acquisition of the hard copy an act implicating defendant Delia's right to privacy.

Since it is not contended nor does the record in any way indicate that any privacy interest of Texaco was violated, seizure of the Texaco credit card record was not the direct consequence of unlawful police conduct.

■ It remains to be determined whether substantial evidence supports the trial court's finding that the Texaco hard copy, which was the indirect product of antecedent unlawful police conduct, i.e., the detention and arrest of defendants Sosa and Varela, would nevertheless have been discovered by lawful means.

■ The doctrine of inevitable discovery applies to evidence which otherwise would be inadmissible as the fruit of the poisonous tree; it was developed to avoid unjustly conferring immunity from prosecution and conviction on criminals. (*People* v. *Superior Court* (*Tunch*), *supra*, 80 Cal.App.3d at p. 673.) Thus where there is a reasonably strong probability that the evidence would have been discovered by lawful means independent of the illegality, such evidence will not be excluded. (*Id.*, at p. 681.)

■ Prior to the receipt by the Sacramento police of the illegally seized Texaco soft copy, Steed was aware through information from defendant Delia of the Texaco credit card and its significance to his investigation. He later learned from defendant Delia the number of the card and that it was in the name of M. A. Delia.

We conclude that substantial evidence supports the trial court's finding there was a reasonably strong probability that the Texaco hard copy would have been discovered by legal means.

## II.

It will be recalled that the unlawfully seized soft copy of the Texaco sales slip showed that gasoline was purchased for a vehicle with California license number 926 MUR; Officer Padovan obtained the hard copy from Texaco on February 23.

On about February 22, Officer Willover of the Sacramento police learned that the vehicle for which the gasoline had been purchased was a blue Volkswagen registered to Sally Hernandez residing at 3800 43d Avenue in Sacramento. Willover learned from police intelligence records that Sally was living at that address with her husband Abraham Hernandez and that Abraham was a reputed member of the Mexican Mafia.

On February 25, Willover contacted defendant Hernandez' parole officer, Martin Rodriguez, who verified that Hernandez was on parole and advised that he had consented to a law enforcement search as a condition of parole. Willover informed Rodriguez of the credit card transaction and how it linked defendant Hernandez to the Delia murder. Rodriguez already knew from talking to Hernandez that he drove the blue Volkswagen and appeared to own it. Later in the evening of that same day, Rodriguez, who had requested to be present at a search of Hernandez, went alone to the Hernandez residence. He arrested Hernandez for missing a narcotics test on February 24, for failure to make an appointment on the afternoon of February 25, and for his suspected involvement in the Ellen Delia murder. Willover's car pulled up as Rodriguez said to Hernandez, "We're going to be taking you in."

A parole search of the Hernandez Volkswagen and residence ensued which resulted in the seizure of photographs, address books and miscellaneous documents belonging to Sally and Abraham Hernandez. Hernandez' motion to suppress this evidence was denied by the trial court.

Although the soft copy of the Texaco sales slip provided the immediate impetus for the parole search, we believe the trial court's findings with respect to inevitable discovery apply equally to evidence seized in the parole search as to the Texaco hard copy, rendering admissible the parole search evidence. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]; *People* v. *Superior Court* (*Tunch*), *supra*, 80 Cal.App.3d at p. 673; *People* v. *Emanuel* (1978) 87 Cal.App.3d 205, 214 [151 Cal.Rptr. 44].)

As heretofore stated, the trial court specifically found the credit card investigation had begun independently of any illegal acts; the police were aware of the Texaco credit card and its significance to their investigation from information supplied them by defendant Delia on February 19 and 22. The trial court's findings are supported by substantial evidence.

Defendant Hernandez further contends, however, that the purported parole search of his residence and Volkswagen was merely a ruse for an otherwise improper warrantless search. The trial court dismissed this contention as lacking in merit. The record amply supports the court's determination. (*People* v. *Lawler, supra*, 9 Cal.3d at p. 160.)

Defendant Hernandez had executed a parole agreement containing the following provision: "I agree that I, my residence and any property

under my control may be searched without a warrant at any time by any agent of the Department of Corrections or any law enforcement officer."

█ The law is settled that a parolee's waiver as a parole condition of his privacy rights is a valid basis for a warrantless search if the condition imposed is reasonably related to future criminality. (*People* v. *Mason* (1971) 5 Cal.3d 759, 762, 764-765 [97 Cal.Rptr. 302, 488 P.2d 630]; *People* v. *Turner* (1976) 54 Cal.App.3d 500 [126 Cal.Rptr. 652]; *People* v. *Howard* (1978) 79 Cal.App.3d 46, 49 [143 Cal.Rptr. 342].) When a parolee has waived such rights, a parole search may be founded on "any report, or suspicion, or belief of continued misconduct" reasonably suggestive of criminal activity and is legal as long as the search is not for the purpose of harassment.' (*People* v. *Turner, supra*, 54 Cal. App.3d at p. 507; *People* v. *Guerrero* (1978) 85 Cal.App.3d 572, 581-582 [149 Cal.Rptr. 555]; see also *People* v. *Mason, supra*, 5 Cal.3d at p. 765, fn. 3.) █ Here, the information provided by Willover regarding the connection of the Hernandez vehicle to the Delia murder was legitimate reason to suspect that Abraham Hernandez was involved in the homicide.

*People* v. *Coffman* (1969) 2 Cal.App.3d 681 [82 Cal.Rptr. 782], relied on by Hernandez, condemned a search conducted by a parole agent acting solely as a "front" for the police and based solely on the parolee's status (at p. 688). *Coffman* is inapposite to a situation where the parolee has agreed to a search by "any law enforcement officer." (*People* v. *Icenogle* (1977) 71 Cal.App.3d 576, 584-585 [139 Cal.Rptr. 637]; *People* v. *Mason, supra*, 5 Cal.3d 759.)

Moreover, Parole Agent Rodriguez made an independent determination to arrest Hernandez and to conduct the parole search. As the trial court found, Rodriguez decided that Hernandez had violated his conditions of parole by missing a scheduled narcotics test and an appointment the following day. He was also aware of the information linking Hernandez to the Delia murder. █ A parole officer may enter and search a parolee's residence even if his suspicions do not amount to probable cause. (*People* v. *Anglin* (1971) 18 Cal.App.3d 92, 95 [95 Cal.Rptr. 588].) The need to maintain the restraints and social safeguards accompanying the parolee's status justifies the relaxed standard for the invasion of the parolee's privacy. (*People* v. *Howard, supra*, 79 Cal.App.3d at p. 49.)

■ Finally, defendant Hernandez contends that the fruits of the search of the Volkswagen should be suppressed because the police had no probable cause to believe that the vehicle was connected to Abraham Hernandez. This argument is specious. Although the Volkswagen was registered solely in Sally's name, Sally and Abraham Hernandez were known to be living together as husband and wife at the time of the search. Thus, substantial evidence supports the superior court's conclusion that the vehicle was under defendant Hernandez' control. (*People v. Reynolds* (1976) 55 Cal.App.3d 357, 368-369 [127 Cal.Rptr. 561], disapproved on other grounds in *People v. James* (1977) 19 Cal.3d 99, 106, fn. 4 [137 Cal.Rptr. 447, 561 P.2d 1135].)

Because the police search founded on the parole condition was lawful as to property under Hernandez' control, Sally's lack of consent is irrelevant; defendant, through his wife, is in no position to claim the officers had no right to search this vehicle. (*Russi v. Superior Court* (1973) 33 Cal.App.3d 160, 167-168 [108 Cal.Rptr. 716]; *People v. Icenogle, supra*, 71 Cal.App.3d at pp. 586-588.)

The petition for writ of mandate is denied. The alternative writ is discharged.

Blease, J., and Janes, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.