[No. B023386. Second Dist., Div. One. Oct. 19, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN CHARLES DANIEL, Defendant and Appellant.

COUNSEL

Brown, Baron, Madden & Gailen, Scott Gailen and Peter Brown for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Donald E. de Nicola and William H. Davis, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LUCAS, J.—Alan Charles Daniel appeals from the judgment entered followng a jury trial in which he was convicted of attempting to sell a person. (Pen. Code, § 181.) He contends that Penal Code section 181 does not apply to the facts herein and that the court erroneously refused jury instructions submitted by defendant.

FACTS

Viewing the evidence in accordance with the usual rules on appeal (*People v. Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]), it was established that in approximately April 1985 appellant allowed Susan and Ronald Miulli to take his 17-month-old daughter[1] to live with them. Appellant did not believe he could take care of his daughter and he had

---

[1] Appellant's daughter's name was "Fallon" but the Miullis called her "Megan."

been told that the Miullis had a great deal of money and would make fine parents.

After appellant's daughter had been living with the Miullis for approximately four months, appellant stated to the Miullis that he liked their home and might be interested in trading it for his condominium.

On November 21, 1985, Nikki Campbell, Susan Miulli's mother, brought appellant's daughter to his home for a visit. Appellant told Campbell he had to talk to Ron Miulli immediately. When Ron Miulli spoke to appellant on the telephone, appellant said he wanted to discuss Megan and requested that they meet underneath the Ventura Freeway overpass on Sepulveda Boulevard. When appellant and Miulli met, appellant said he was going to allow them to adopt Megan but that he wanted to talk about something else. Appellant said that he liked the house the Miullis owned, knew it was on the market for $330,000, that they owed $240,000 and that appellant wanted to make a new start for himself. Miulli asked appellant, "What are you saying? What are you getting at?" Appellant said, "You know. Don't make me repeat myself. You know what I want." Miulli said, "You mean you want the difference?" and appellant said, "That's right." Miulli explained that was $90,000 and appellant said, "That's what it's going to take to get Megan back."

After the meeting under the freeway, Ron Miulli had additional conversations with appellant during which time appellant told Miulli that appellant had "talked to many high-powered attorneys, and that he was totally within his rights to get money for her." Appellant offered to accept $15,000 immediately and the rest in payments. Appellant was charged with attempting to sell a person in violation of Penal Code section 181.[2]

In defense, appellant testified that money was short and he had heard the Miulli family had a great deal of money, a fine home, and that they would be good parents. He testified that prior to November 21, he had asked his sister, who was a legal secretary, to find something out about "consenting to an adoption and receiving money . . . [to] do this thing right." Appellant said he wanted "to clear the passageway for them to, so-called, adopt my daughter and to clear the red tape." Appellant testified he thought it might

---

[2]Penal Code section 181 provides: "Every person who holds, or attempts to hold, any person in involuntary servitude, or assumes, or attempts to assume, rights of ownership over any person, or who sells, or attempts to sell, any person to another, or receives money or anything of value, in consideration of placing any person in the custody, or under the power or control of another, or who buys, or attempts to buy, any person, or pays money, or delivers anything of value, to another, in consideration of having any person placed in has custody, or under his power or control, or who knowingly aids or assists in any manner any one thus offending, is punishable by imprisonment in the state prison for two, three or four years."

not feel as bad giving the baby up if he got some money for her and that he planned to give the baby to the Miullis if they gave him $90,000.

Appellant's sister testified she is a legal secretary and that she asked several attorneys "for advice in looking up Penal Codes in reference to adoptions and the legalities of same," and she showed appellant a copy of Penal Code section 273.

## DISCUSSION

At trial appellant claimed that Penal Code section 273 was the only statute that regulated the acceptance of money for consenting to an adoption.[3] He further argued that receiving money to consent to the adoption of one's child was not a sale and did not violate the provisions of Penal Code section 181. The court refused to instruct the jury according to appellant's theory[4] and instructed the jury pursuant to the provisions of CALJIC No. 3.31 and the People's special instruction No. 1.[5]

The contention that Penal Code section 181 does not apply to the facts herein is without merit. The evidence established that appellant offered to give Megan to the Miulli family if they gave him $90,000. While there appears to be no previously published case where a natural parent has been convicted of violating Penal Code section 181 for attempting to sell his

---

[3] Penal Code section 273 provides: "(a) It is a misdemeanor for any person or agency to offer to pay money or anything of value, or to pay money or anything of value, to a parent for the placement for adoption, for the consent to an adoption, or for cooperation in the completion of an adoption of his child. This section does not make it unlawful to pay the maternity-connected medical or hospital and necessary living expenses of the mother preceding and during confinement as an act of charity, as long as the payment is not contingent upon placement of the child for adoption, consent to the adoption, or cooperation in the completion of the adoption.

"(b) It is a misdemeanor for any parent to obtain the financial benefits set forth in subdivision (a) with the intent to receive such financial benefits without completing the adoption or without consenting to the adoption."

[4] Special instructions submitted by appellant and refused by the court stated essentially that Penal Code section 181 did not apply to situations where the parties intended to obtain court approval in an adoption proceeding, or where money was paid in consideration of the consent by the natural parent to the adoption. Additionally, appellant submitted an instruction to the effect that in a sale the obligation of the seller is to transfer and deliver and the buyer is to accept and pay in accordance with the contract.

[5] "CALJIC 3.31 (1980 Revision) Concurrence of Act and Specific Intent

"In the crime charged in [Count I of] the information, [namely,] the attempted sale of a person, there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator and unless such specific intent exists the crime to which it relates is not committed.

"[The specific intent required is included in the definition of the crime charged.]"

People's special instruction No. 1 reads as follows: "Any person who attempts to sell any person to another is guilty of violating Penal Code section 181."

child, there is also no authority for appellant's strained interpretation that Penal Code section 181 does not apply if the natural parent is contemplating a "so-called" adoption.

Section 181 provides that *"Every person* who . . . sells, or attempts to sell *any person* . . . is punishable by imprisonment . . . ." (Italics added.) The statute does not exempt natural parents who sell their children from the term "[e]very person," nor does it exempt the child of such person from the term "any person." Similarly, there is no language in the statute which exempts transactions in which adoption is the ultimate goal of the perpetrator, or language that limits the statute's applicability to "a transaction in which the contemplated 'sale' is fully executed upon the transfer of the person and the payment of money . . . ." as appellant argues. The language of the statute is unequivocal, adherence to the language does not result in an absurdity and the court will not look beyond the wording of the statute to determine its meaning. (See *Leffel* v. *Municipal Court* (1976) 54 Cal.App.3d 569, 572 [126 Cal.Rptr. 773].)

While appellant contends he cannot be convicted of attempting to sell his child because he anticipated that she would be adopted, courts in other jurisdictions have not been reluctant to term similar transactions " 'dealing in humanity.' " (See *In re Baby Girl D.* (1986) 512 Pa. 449 [517 A.2d 925, 930].) In *Barwin* v. *Reidy* (1957) 62 N.M. 183 [307 P.2d 175, 183], the natural parents of two children, ages one and a half and three years, executed a consent to their adoption and received $400 from the adoptive parents. This money was not going to pay hospital or medical expenses. In holding that the actions of the natural parents constituted an abandonment of the children, the New Mexico Supreme Court ruled that the circumstances amounted to a sale of the two children: "We are certain not one of these people faced the facts and recognized their actions effected the *purchase* and *sale* of two little children." (Italics added.) Similarly, we hold that demanding money to consent to an adoption constitutes an attempted sale and is a violation of Penal Code section 181.

We are unconvinced by appellant's attempt to distinguish the situation where the demand for payment is for the consent to adoption from the situation where the demand for payment is for the immediate possession of the child. In both instances, the natural parent offers to permanently give the child to another in exchange for payment; implicit in the transaction is the natural parent's intent to receive a benefit in exchange for the child.

Appellant seeks to avoid application of Penal Code section 181 by claiming that his conduct is regulated by Penal Code section 273, and not section 181. We disagree. Penal Code section 273, subdivision (a) makes it a

misdemeanor for a person or agency to offer to or to pay money or anything of value to a parent for the placement for adoption, for the consent to an adoption or for cooperation in the completion of an adoption of his child. The section does not make it unlawful to pay the maternity-connected medical or hospital and necessary living expenses of the mother preceding and during confinement as an act of charity not contingent on the adoption. Subdivision (b) of this section makes it a misdemeanor to obtain these lying-in expenses with the intent to receive such financial benefits without completing the adoption or without consenting to the adoption. The intent of this subdivision clearly is to prevent the fraudulent receipt of these benefits.

Neither of these subdivisions apply to appellant's conduct. He is not a person or agency offering to make or making a payment. Neither is he accepting lying-in expenses intending not to complete the adoption. No reference is made anywhere in the statute to a parent, such as appellant, who demands money for giving consent to an adoption. Such conduct, which we hold to be the equivalent of selling a child (see *Barwin* v. *Reidy, supra,* 307 P.2d at p. 183), is outside the scope of section 273 while falling squarely within the proscriptions of section 181.

Based on the foregoing, the trial court did not err in refusing to give appellant's special instructions.

## DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.