[No. B072276. Second Dist., Div. Three. July 8, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS ALBERTO MOLINA DELVALLE, Defendant and Appellant.

**COUNSEL**

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Patrick T. Brooks, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and appellant Luis Alberto Molina Delvalle appeals the judgment (order granting probation) entered following his conviction of two counts of attempting to buy a person. (Pen. Code, § 181.)[1]

Because the evidence supports the convictions and the conditions of probation are reasonably related to Delvalle's offense, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The People's case-in-chief.*

Viewed in accordance with the usual rule of appellate review (*People v. Thomas* (1992) 2 Cal.4th 489, 514 [7 Cal.Rptr.2d 199, 828 P.2d 10]; *People v. Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), the evidence established that Orozco lived in Lynwood. Her four-year-old daughter attended kindergarten a short distance from their home. Orozco walked the child to and from school each day. On July 14, 1992, at 11:30 a.m., Orozco saw Delvalle outside the school in his car. Orozco had never seen Delvalle before. He called to Orozco and "asked [her] to give him the girl." Orozco said, " 'No,' " and continued walking. Orozco recalled his exact words were: " 'Could you give me the girl?' " Delvalle then asked "[i]f [Orozco] would sell her to him." When Orozco again said no, Delvalle offered her money although he did not say how much. Orozco again said no and walked home "fast."

Delvalle followed Orozco and her child home in his car and repeated his demands two or three more times that day. Orozco testified, "All the time he

---

[1]All subsequent statutory references are to the Penal Code, unless otherwise indicated.

Section 181 provides: "*Every person who* holds, or attempts to hold, any person in involuntary servitude, or assumes, or attempts to assume, rights of ownership over any person, or who sells, or attempts to sell, any person to another, or receives money or anything of value, in consideration of placing any person in the custody, or under the power or control of another, or who *buys, or attempts to buy, any person,* or pays money, or delivers anything of value, to another, in consideration of having any person placed in his custody, or under his power or control, or who knowingly aids or assists in any manner any one thus offending, is punishable by imprisonment in the state prison for two, three or four years." (Italics added.)

would tell me to give him the girl." "The first time [he said] to give him the girl. To sell her to him. And how much I wanted. [¶] I went towards my house. When I arrived to my house—he was parked in front of the house. I didn't get to my house. I went inside my neighbor's house, right by my house. I was afraid to go to my house. Because he was parked there."

Two days later, on July 16, 1992, Orozco again walked her daughter home from school and saw Delvalle driving the same car. Orozco tried to avoid Delvalle but he drove up to her and again asked Orozco to sell the child to him. He also told Orozco "to give him the girl." Delvalle asked Orozco for the girl twice that day.

The next day, July 17, 1992, Orozco saw Delvalle again but does not recall if he spoke to her.

On Monday, July 20, 1992, Delvalle followed Orozco and the child home from school in a blue pickup truck and said "the same words, if I would give him the girl, or if I would sell her to him." Orozco continued walking quickly. Delvalle drove ahead of them and moved over in the truck to the passenger door which was closest to the sidewalk. Orozco told her daughter to run. Delvalle asked Orozco for the child three or four times that day.

On cross-examination Orozco testified the Spanish words spoken by Delvalle were, "de me a la nina" and "vendame a la nina." Orozco testified Delvalle did not speak the Spanish words written on defense exhibit A which were: "Me la das, o me la vendes."

Orozco reported the matter, and on July 23, 1992, sheriff's Detective Elizabeth Smith walked home with Orozco and her child. Delvalle drove next to them and stopped. Orozco pointed Delvalle out to Smith. Delvalle looked at Smith with a startled expression and drove away quickly. Smith made a radio broadcast and Delvalle was arrested.

After advising Delvalle of his rights per *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], Smith told Delvalle he was charged with attempting to buy a child. Delvalle responded he had only waved to the child once. He said "he had passed by the girl and waved at her. He . . . had seen her before and he had admired her." Delvalle admitted he did not know the girl and referred to her in his statements as "nina" which means small girl. However, Delvalle then said, "Oh, you thought I was talking about the little girl, I was talking about the big girl. The one that's about 20 or 21 years old." Delvalle told Smith he thought Orozco was attractive and wanted to speak to her.

## 2. *Defense.*

Defense investigator Richard Arrellano testified he interviewed Orozco on October 13, 1992, at her residence. Orozco told Arrellano the exact language used by Delvalle was, "Me la das, o me la vendes." Arrellano claimed these words can be interpreted as, "Will you give it to me, or will you sell it to me," or "would you give her to me, or would you sell her to me." Arrellano previously has heard the statement used as a crude sexual proposition directed to an adult woman.

Beatriz Overfield, an interpreter for the superior court, testified "Me la das, o me la vendes" could mean a proposition to a woman or a compliment directed at an object or a female child. In Guatamala this phrase commonly is used to compliment a child in the presence of a parent. It means the speaker would like to have a child like that.[2]

## 3. *Rebuttal.*

Orozco was recalled and testified she was frightened of Delvalle. He did not compliment, greet or converse with Orozco in a friendly way. Orozco could see Delvalle was referring to her daughter by the movement of his head and eyes.

Maria De Alvarado, counsel to the Guatemalan Consulate in Los Angeles, testified she was a judge in Guatemala for five years and had presided over cases involving prostitution. She interprets the phrases on defense exhibit A to mean handing over or buying an object. If the statement was made to an adult female in the presence of a child, it would mean, "Will you give me the girl?" or, "Will you sell me the girl?" The phrases do not infer a sexual proposition.

John Ulmen, counsel with the Guatemalan consulate in Los Angeles, testified the phrases on defense exhibit A indicate someone is "asking for something to be given to them or sold to them." These words would not be used to proposition an adult woman. Ulmen also observed "there is a growing problem in Guatemala, because of children for adoption, of stealing and buying and selling children."

Jose Araluce-Cuenca, an expert in the contemporary and historical usage of different forms of Spanish, testified the phrases on defense exhibit A refer

---

[2]Although there is no evidence on the point, the case was tried by the parties on the premise Delvalle is Guatemalan. We note the report of the probation officer indicates Delvalle is a citizen of Guatemala.

to a female person or an object of the female gender which is someone other than the person being addressed. These phrases are interpreted: "Give it to me or give her to me." "Sell it to me or sell her to me." If these words were spoken to an adult female accompanied by a small girl, the demand would refer to the child.

### 4. *The trial court's ruling.*

The trial court considered the alleged offense to be a specific intent crime because of the attempt to buy language in the statute. It found Delvalle guilty of two counts of violating section 181 related to Delvalle's conduct on July 14 and 16, 1992.[3]

## CONTENTIONS

Delvalle contends there is insufficient evidence to support the convictions. Alternatively, he claims his conduct will not support conviction of two counts of attempting to buy a person. Delvalle also asserts the condition of probation requiring him to stay away from places where minor children congregate must be stricken because it forbids noncriminal conduct and violates his constitutional rights.

## DISCUSSION

### 1. *The evidence supports Delvalle's conviction of attempting to buy a person.*

Delvalle contends his conduct did not "establish an 'attempt' under . . . section 181, as his requests, if anything, amounted to nothing more than a mere 'solicitation' to purchase the minor child." He claims "the evidence revealed unsolicited, harassing conduct by appellant" but not "an 'attempt' to buy another person . . . ." He asserts he never got out of his car or displayed any money. He contends his conduct amounts to nothing more than preparation and does not constitute an attempt.

This claim lacks merit.

" 'It is settled that an attempt to commit a crime is compounded of two elements, viz., intent and a direct ineffectual act done toward its

---

[3]The abstract of judgment incorrectly memorializes the conviction on count 5 as a violation of sections 664/181. The parties have been notified this court, on its own motion, will direct the clerk of the superior court to correct the abstract to conform to the trial court's judgment. (Gov. Code, § 68081.)

commission. It is equally well settled that there is a material difference between the preparation antecedent to an offense and the actual attempt to commit it. The preparation consists of devising or arranging the means or measures necessary for the commission of the offense, while the attempt is the direct movement toward its commission after the preparations are made. In other words, to constitute an attempt the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances. [Citations.]' [Citations.]" (*People* v. *Memro* (1985) 38 Cal.3d 658, 698 [214 Cal.Rptr. 832, 700 P.2d 446].)

"[A]n attempt, as distinguished from acts preparatory to that offense, requires 'some appreciable fragment of the crime . . . accomplished.' [Citations.] However, '[a]n overt act need not be the ultimate step toward the consummation of the design; it is sufficient if it is the first or some subsequent act directed towards that end after the preparations are made.' [Citations.]" (*People* v. *Memro, supra,* 38 Cal.3d at p. 698.)

Further, " '[w]henever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of that design will constitute an attempt, and the courts should not destroy the practical and common-sense administration of the law with subtleties as to what constitutes preparation and what constitutes an act done toward the commission of a crime.' [Citations.]" (*People* v. *Memro, supra,* 38 Cal.3d at p. 698; *People* v. *Dillon* (1983) 34 Cal.3d 441, 455 [194 Cal.Rptr. 390, 668 P.2d 697].)

Neither refusal of the victim to comply with the accused nor the ultimate impossibility of completion of the offense prevents the commission of an attempt. (See *People* v. *Memro, supra,* 38 Cal.3d at p. 699; *People* v. *Imler* (1992) 9 Cal.App.4th 1178, 1181 [11 Cal.Rptr.2d 915]; *People* v. *Ross* (1988) 205 Cal.App.3d 1548, 1555 [253 Cal.Rptr. 178].)

" 'When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he committed an act that caused harm or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime.' [Citation.]" (*People* v. *Dillon, supra,* 34 Cal.3d at p. 453.)

 The pertinent portion of section 181 declares it a felony to buy or attempt to buy any person. The evidence produced at trial, viewed in the light most favorable to the judgment, clearly was sufficient to allow a rational trier of fact to find Delvalle guilty beyond a reasonable doubt. (*People* v. *Johnson* (1993) 6 Cal.4th 1, 38 [23 Cal.Rptr.2d 593, 859 P.2d 673]; *People* v. *Wader* (1993) 5 Cal.4th 610, 640 [20 Cal.Rptr.2d 788, 854 P.2d 80]; *People* v. *Johnson, supra,* 26 Cal.3d at pp. 576-578.)

Delvalle repeatedly approached Orozco and asked her to give or sell the child to him. Orozco testified Delvalle was frightening and clearly was referring to her child. This conduct went beyond mere preparation. But for Orozco's resolute refusal of Delvalle's overtures, the crime would have been committed.

Delvalle's reliance on various cases which conclude an attempt to commit an offense had not been shown on the facts presented is misplaced. (See *Ex parte Floyd* (1908) 7 Cal.App. 588 [95 P. 175] [solicitation to print redeemable cigar coupons not an attempt to commit forgery]; *People* v. *Gallardo* (1953) 41 Cal.2d 57 [257 P.2d 29] [attempt to commit abortions reversed absent evidence of direct, unequivocal act toward commission]; *People* v. *Adami* (1973) 36 Cal.App.3d 452 [204 Cal.Rptr. 700, 683 P.2d 699] [no attempted murder shown in solicitation to commit murder case]; *People* v. *La Fontaine* (1978) 79 Cal.App.3d 176 [144 Cal.Rptr. 729] [verbally soliciting lewd act did not constitute an attempt to commit a lewd act].)

Each case must be decided on its own merits. "[N]one of the various 'tests' used by the courts can possibly distinguish all preparations from all attempts." (*People* v. *Memro, supra,* 38 Cal.3d at p. 699.) On the facts presented here, the trial court properly could conclude Delvalle had violated section 181. Accordingly, there is no insufficiency of the evidence. We note there appears to be only one other published opinion which addresses the sufficiency of the evidence to support a conviction of violating section 181. In *People* v. *Daniel* (1987) 195 Cal.App.3d 623 [241 Cal.Rptr. 3], a father's demand for $90,000 in exchange for consenting to the adoption of his minor child who had been living with the prospective adoptive parents for several months constituted an attempt to sell the child within section 181. Because the conduct alleged here is quite dissimilar to the facts in *Daniel,* analogy to *Daniel* is of little assistance.

2. *The conviction of two counts of attempting to buy a person was proper.*

■ Delvalle asserts the conviction of one count of attempting to buy a person must be reversed because he engaged in a continuous course of conduct related to the purchase of a single victim, at the same location, by use of the same words. He claims he therefore committed only one criminal act.

We disagree. The two offenses were separated in time by a period of two days. Clearly, each offense was separate. Under the rule proposed by Delvalle, he could attempt to buy the child any number of times with

impunity after the initial attempt. Delvalle's repeated and persistent conduct merits additional punishment.[4]

Delvalle's analogy to *People* v. *Estes* (1983) 147 Cal.App.3d 23 [194 Cal.Rptr. 909], is flawed in that the robbery in progress there had not been completed and thus included an assault committed in furtherance of escape. The other case relied on by Delvalle, *People* v. *Richardson* (1978) 83 Cal.App.3d 853 [148 Cal.Rptr. 120], disapproved on another point in *People* v. *Saddler* (1979) 24 Cal.3d 671, 682 [156 Cal.Rptr. 871, 597 P.2d 130], applies by its own terms only to the crime of theft.

3. *The conditions of probation imposed by the trial court were reasonably related to Delvalle's crimes and sufficiently tailored to avoid constitutional imperfection.*

The trial court granted probation on condition, inter alia, Delvalle spend the first year in the county jail. The trial court also ordered Delvalle "to stay away from the victim in this case and also stay away from any places where minor children congregate. [¶] The obvious places that come to mind are elementary schools, day care, parks. [¶] Stay away from places where young children are around."

Delvalle asserts the evidence does not show criminal activity in a place where children congregate and even if it did, his presence in such places has no relationship to the crime charged. Delvalle points out he approached the child's mother not the child, the offense did not occur at or near a school, and the defense expert testified Delvalle more likely was attempting to ingratiate himself with the mother.

Delvalle contends the condition of probation requiring him to stay away from places where minor children congregate must be stricken because it forbids noncriminal conduct and violates his rights to free association and due process of law in that it is vague and ambiguous.

These claims lack merit.[5]

"The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and what conditions should be imposed. [Citations.]" (*People* v. *Welch, supra,* 5 Cal.4th at p. 233.)

---

[4] We note in passing the trial court dismissed counts 2, 3 and 4, pursuant to section 995. These counts alleged additional violations of section 181 on July 14, 1991. The trial court reasoned the conduct underlying these counts was one course of conduct embodied in count I because each count had occurred within a short period of time on the same date.

[5] *People* v. *Welch* (1993) 5 Cal.4th 228 [19 Cal.Rptr.2d 520, 851 P.2d 802], held failure to raise a timely challenge to the reasonableness of a probation condition proposed at the probation and sentencing hearing constitutes a waiver of the claim on appeal. However, *Welch's* holding is limited to prospective application. Thus, the previous rule that failure to

"A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Burgener* (1986) 41 Cal.3d 505, 532 [224 Cal.Rptr. 112, 714 P.2d 1251]; *People* v. *Bauer* (1989) 211 Cal.App.3d 937, 942 [260 Cal.Rptr. 62].)

 Here, the condition is directly related to the crime alleged against Delvalle in that his attempts to purchase the child centered on her presence at school. In each alleged instance Delvalle followed Orozco and her child home from kindergarten. (Cf. *People* v. *Burden* (1988) 205 Cal.App.3d 1277, 1279 [253 Cal.Rptr. 130] [condition prohibiting work in outside or commissioned sales bore no reasonable relationship to offense of writing checks on insufficient funds or to future criminality].)

Further, the condition is reasonably related to future criminality in that places where minor children congregate is a probable situs at which Delvalle might duplicate this offense.

Regarding the claim of constitutional invalidity, we agree conditions of probation that impinge on constitutional rights must be tailored carefully and "reasonably related to the compelling state interest in reformation and rehabilitation . . . ." (*People* v. *Mason* (1971) 5 Cal.3d 759, 768 [97 Cal.Rptr. 302, 488 P.2d 630].)

Here, however, the state has a compelling interest in the protection of children which justifies the restriction on Delvalle's freedom of association. Nor is the condition overbroad as the trial court indicated by example the restriction applied to such places as elementary schools, day-care centers and parks. As no overbreadth or ambiguity appears, the condition properly was imposed.

## CONCLUSION

The evidence supports Delvalle's conviction of two counts of attempting to buy a person, and the conditions of probation were reasonable and do not impermissibly infringe Delvalle's constitutional rights.

---

object at the time of sentencing does not prevent a defendant from challenging the reasonableness of a probation condition on appeal applies here.

## Disposition

The clerk of the superior court is directed to prepare a corrected abstract of judgment reflecting Delvalle's conviction in counts 1 and 5 of violations of section 181. The judgment (order granting probation) is affirmed.

Croskey, J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 13, 1994.