Filed 2/26/25  P. v. CintoDeLeon CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BELISARIO CINTODELEON,<br><br>        Defendant and Appellant. | A169193<br><br>(San Mateo County Super. Ct. No. 23NF002658A) |

Belisario CintoDeLeon was placed on probation after pleading no contest to committing a lewd act with a minor.  He contends the trial court exceeded its jurisdiction by imposing additional conditions of probation subsequent to the sentencing hearing.  He further challenges two of these conditions as unconstitutional.  We disagree with the jurisdictional claim but agree that modification of the two specifically challenged conditions is necessary.

## BACKGROUND

This case arises from reports by CintoDeLeon's then 10-year-old niece that he had touched her chest and "bottom" on several dates between

1

June 2022 and January 2023.[1] CintoDeLeon and his niece were living in the same household, as CintoDeLeon's wife had custody of the child.

CintoDeLeon was charged by information filed on April 12, 2023, with continuous sexual abuse of a child (Pen. Code,[2] § 288.5, subd. (a)) (count 1); four counts of lewd conduct with a child under the age of 14 (§ 288, subd. (a)) (counts 2-5); and misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a) (count 6). Count 2 alleged an enhancement for substantial sexual conduct (§ 1203.066, subd. (a)(8)) and count 5 alleged a felony-with-circumstances-in-aggravation enhancement (§ 1170, subd. (b)(2). On July 18, 2023, CintoDeLeon entered a plea of no contest to count 5 and admitted the enhancement.

On September 25, 2023, the court suspended imposition of sentence and placed CintoDeLeon on formal probation for two years, with specified conditions. At a subsequent hearing on October 18, 2023, the court added 20 further conditions of probation.

CintoDeLeon filed a timely notice of appeal on November 6, 2023.

## DISCUSSION

### I.

### *The Challenge to the Trial Court's Jurisdiction Was Forfeited.*

CintoDeLeon challenges the trial court's authority to impose any of the probation conditions added at the October 18, 2023[3] hearing. He maintains that the court lacked jurisdiction to modify the conditions imposed when he

---

[1] The specific facts of the reported touchings are not relevant to the issues on appeal.

[2] Further statutory references will be to the Penal Code except as otherwise specified.

[3] Further references to dates will be to the year 2023 unless otherwise specified.

was placed on probation absent a change of circumstances or probation violation.

## A. Additional Background

When the trial court placed CintoDeLeon on probation on September 25, it specified the following conditions: Obey all laws; submit person, vehicle and residence to search and seizure; abstain from use or possession of alcohol and controlled substances and submit to chemical testing; not own or possess dangerous or deadly weapons and/or firearms or ammunition; seek and maintain full-time employment and participate in vocational or educational programs as directed by the probation officer; submit to genetic marker testing; participate in treatment or counsel as directed by the probation officer.[4]

The October 18 hearing began with a discussion at the bench. On the record, the court stated that "[f]urther conditions of probation require" CintoDeLeon to participate in and successfully complete an approved sex offender management treatment program; submit to random polygraph evaluations; waive psychotherapist-patient privilege to enable communication between the professionals and probation; not communicate or have any contact with the victim; "[n]ot associate with minors under the age of 18, or go to places where minors congregate unless in the presence of a responsible adult approved by [p]robation"; not loiter, or come within 50 yards of "places where children congregate, such as schools, parks, playgrounds, video arcades, and swimming pools, without the permission of

---

[4] The court also imposed and stayed a probation revocation fine and reserved jurisdiction as to restitution.

3

the probation officer"[5]; not enter or loiter near places of sexual or pornographic activities, such as adult bookstores, sex shops," not possess "pornographic magazines, videos pictures, or written material or images unless prescribed by a therapist" and not reside in a house where a child resides; not "date, socialize, or form a romantic relationship with any person that has physical custody of a minor unless approved by the probation officer"; submit electronic devices to search by probation or police officers and provide passwords or encryption keys; notify the probation officer of possession or control of a storage facility or locker; not obtain employment allowing entry into a personal residence, and obtain approval of the probation officer for employment.[6]

As it listed these conditions, when the court stated that CintoDeLeon was prohibited from residing in a house where a child resides, it noted that it was imposing this condition over the objection of the defense. The court stated, "We did have a conversation at the bench, and based on the facts of the case, over the defense's objection—I'll let you make a record after this, [defense counsel]—the Court does think it's appropriate, based on the fact that he had a child in the house, and that's what the facts of the underlying case are." The court continued with additional conditions, then asked CintoDeLeon, "Do you understand and accept those modified terms of your probation?"

Defense counsel immediately asked to make his record and proceeded to object to the conditions using the phrase " 'where minors congregate' " and

---

[5] As to this condition, the court noted that probation had agreed to soccer and this was "okay" with the court.

[6] The minute order for October 18 additionally states the condition that CintoDeLeon register as a sex offender pursuant to section 290.

the condition prohibiting dating, socializing or forming a romantic relationship with a person who has physical custody of a minor.  Counsel first argued that the conditions using the phrase " 'where minors congregate' " were vague.  The court responded, "[w]here children are hanging out, don't go there."  Counsel said he did not know what " 'hang out' " means and asked, "[i]f you go to a movie theater and it's Christmastime with tons of kids—" and "[w]hat about on a Tuesday" or "Tuesday evening" or "if it's an R-rated movie."  To each of these questions, the court replied, "[d]on't go there" or "[i]f there's kids there, don't go there."  Counsel then objected to the condition directing CintoDeLeon not to date, socialize with or form a romantic relationship with a person who has physical custody of a child.  Counsel noted that CintoDeLeon was married to a woman with custody of a minor, said he did not believe courts have the authority to order someone not to have a romantic relationship, and argued that the court's previous order that CintoDeLeon not socialize with anyone under age 18 "should satisfy any concerns."  The court explained that it believed the condition was appropriate because, based on the facts of the case, it was "important to protect any children in the household."  Returning to the vagueness issue, counsel then asked, "[w]hat about church on Sunday?" and the court responded, "[i]f approved by probation."  Counsel observed that this was "just an example how that term is vague," and the court reiterated that they could ask the probation officer for permission, saying the court had no objection to CintoDeLeon going to church.

At this point, the court asked, "Do you understand and accept that modified condition of probation?"  CintoDeLeon responded, "Yes."

A document subsequently filed on October 30 sets forth certain "general conditions of probation"[7] and states that these general conditions apply "[i]n addition to the conditions of probation specified in the attached Superior Court Minutes."  The document is accompanied by the court's minutes for September 25, modified to include the conditions imposed on October 18. CintoDeLeon signed the document beneath a statement certifying that he had read the specific and general conditions of probation, understood them and agreed to conduct himself in accordance with them.

**B. Analysis**

"At any time during the probationary period, a trial court has the authority to modify the terms of probation.  (§ 1203.3, subd. (a).)  However, '[a] change in circumstances is required before a court has jurisdiction to . . . modify probation.'  (*People v. Cookson* (1991) 54 Cal.3d 1091, 1095 (*Cookson*).)  As the Supreme Court held in *In re Clark* (1959) 51 Cal.2d 838, '[a]n order modifying the terms of probation based upon the same facts as the original order granting probation is in *excess* of the jurisdiction of the court, for the reason that there is no factual basis to support it.'  (*Id.* at p. 840, italics added; *People v. Leiva* (2013) 56 Cal.4th 498, 505.)  In this context, a 'change in circumstance' requires 'a fact "not available at the time of the original order." '  (*Cookson, supra*, at p. 1095.)  Thus, a modification order based upon the same facts as the original order is improper because 'the court [has] reached a different conclusion based upon the same facts.'  (*People v.*

---

[7] These conditions are to report as directed and obey all reasonable and proper instructions given by the probation officer; seek and maintain employment and keep probation officer apprised of employment status, address and phone number; not leave the state without prior permission of the probation officer and keep probation officer apprised of physical whereabouts, residence and phone number; and not own or have possession, custody or control of any firearm.

*Mendoza* (2009) 171 Cal.App.4th 1142, 1156 (*Mendoza*).)" (*People v. Rogers* (2024) 106 Cal.App.5th 88, 92-93.)

Here, when the trial court imposed the additional conditions of probation approximately three weeks after having placed CintoDeLeon on probation, there had been no probation violation and no change in circumstances. The People, however, argue that CintoDeLeon forfeited and is estopped from asserting any challenge to the trial court's jurisdiction to impose the additional conditions by acquiescing and participating in the October 18 proceeding.

Preliminarily, several of the additional conditions of probation imposed at the October hearing were required by law. (§ 1203.067, subd. (b) [participate in and complete sex offender management program, submit to random polygraph evaluations, waive psychotherapist-patient privilege].) "The trial court's failure to impose the mandatory probation terms at the time of the original sentence created a legally unauthorized sentence" (*People v. Cates* (2009) 170 Cal.App.4th 545, 552) that was " ' "subject to judicial correction when it ultimately [came] to the attention of the trial court or [reviewing] court' [citations]." ' " (*Ibid.*) The trial court's modification of probation to include these conditions was proper regardless of principles of estoppel or forfeiture.

As for the other conditions imposed on October 18, our Supreme Court has "long recognized that a failure to object can constitute implied consent to an act in excess of the court's jurisdiction." (*People v. Ford* (2015) 61 Cal.4th 282, 288 (*Ford*).) " '[W]hen a court possesses subject matter jurisdiction, "a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.]" [Citation.] In addition, objections to

acts in excess of a court's jurisdiction may be subject to bars including waiver (the intentional relinquishment of a known right) and forfeiture (the loss of a right through failure of timely assertion).' (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1427 [defendant who consented to a sentence is estopped from arguing in a collateral attack that the court lacked jurisdiction to impose the sentence]; see also *Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 842.)" (*People v. Medina* (2009) 171 Cal.App.4th 805, 817 [by admitting allegations of sexually violent predator petition, defendant in effect consented to entry of commitment order, forfeiting later challenge to order as exceeding court's jurisdiction]; *People v. Mower* (2002) 28 Cal.4th 457, 474, fn. 6 [issue that "implicates jurisdiction in its less fundamental sense" does not undermine court's personal or subject matter jurisdiction and "is subject to bars including waiver and forfeiture"].)  "Claims of error relating to sentences 'which, though otherwise permitted by law, were imposed *in a procedurally* or factually *flawed manner'* are waived on appeal if not first raised in the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)" (*People v. Brach* (2002) 95 Cal.App.4th 571, 577.)

The record does not explain why the court imposed the additional probation conditions at a hearing subsequent to the initial sentencing.  It does show, however, that CintoDeLeon had an opportunity to object to imposition of the conditions and did not do so.  As we have said, the October 18 hearing began with an off-the-record discussion between the court and counsel.  Defense counsel apparently raised at least one objection during that discussion, as the court referred back to the "conversation at the bench" in noting that it was imposing the residential condition over defense objection.  When counsel thereafter was given an opportunity to put his

8

objections on the record, he objected to three conditions as vague or overbroad. Counsel stated no objection to the court's authority to add conditions beyond those imposed at the September 25 sentencing hearing.

CintoDeLeon disputes whether he can be viewed as having consented to the court's procedure.[8] He argues, first, that "mere presence" at a hearing does not constitute consent to everything the court does at that hearing. But the record here demonstrates much more than mere presence. Defense counsel raised objections in an off-the-record discussion with the court, was specifically given an opportunity to state his objections for the record and

---

[8] CintoDeLeon asserts that although he "may have agreed to follow the court's order imposing additional conditions of probation," he "did not agree that the court could impose them outside its jurisdictional authority." He then points out that he did not respond when the court asked if he understood and accepted the modified "conditions" (plural) after listing them, then later said only that he understood the "condition" (singular) allowing him to attend church with the probation officer's permission.

If CintoDeLeon is claiming he never accepted the modified conditions of probation (despite his acknowledgment that he "may have agreed to follow the court's order," we do not view this as a fair interpretation. When the court asked if CintoDeLeon understood and accepted the modified terms of probation, defense counsel's immediate request to state his objections for the record in effect prevented CintoDeLeon from responding to the court's question at that moment. The ensuing discussion between court and counsel addressed the few specific conditions counsel argued were vague or overbroad, ending with counsel's question how CintoDeLeon would know whether he could attend church. The court then asked whether CintoDeLeon understood and accepted "that modified condition of probation," its wording indicating it was referring only to the language requiring him to avoid places where minors congregate, and the court did not repeat its question as to the modified conditions in the plural. In essence, the court got sidetracked. But CintoDeLeon did not object to the procedure by which the modified conditions were imposed or to the substance of the vast majority of them, and he did in fact accept probation. We find it unreasonable to conclude he did not accept the conditions imposed on October 18—subject, of course, to the specific objections counsel stated.

9

used that opportunity to object to specific conditions the court was imposing. Nothing prevented counsel from also stating any objection to the imposition of the additional conditions as an impermissible modification of probation. (*People v. Brach, supra,* 95 Cal.App.4th at p. 577 [parties must be given reasonable opportunity to object].)  By failing to do so, the defense impliedly consented to the procedure.  (*Ford, supra,* 61 Cal.4th at p. 288.)

Arguing that he did not agree to the October hearing or modification of his conditions of probation, CintoDeLeon contrasts this case with *Ford,* which held that the defendant was estopped from challenging a restitution order entered a week after his probation term had expired because he agreed to the continuance resulting in the hearing being held after the end of the probation period and benefitted from it in that he had requested the hearing in order to rebut a prima facie showing of the amount of restitution he owed.  (*Ford, supra,* 61 Cal.4th at p. 286.)  CintoDeLeon maintains that the October hearing in the present case offered no benefit to him.  The absence of affirmative benefit or explanation for CintoDeLeon's failure to object does not change the fact that his failure to object to the procedure by which the court imposed his additional probation conditions, despite being afforded an opportunity to do so, amounted to implied consent.  In *Ford,* the clear benefit to the defendant in *Ford* explained why he agreed to the continuance and provided additional support for the conclusion that it was appropriate to apply estoppel principles, but these facts do not equate to a *requirement* that the reason for or benefit to a defendant from acquiescing in the court's action be affirmatively demonstrated.

CintoDeLeon points to the principle that "[w]hether the party should be estopped depends on a weighing of equities in the particular case, the effect of estoppel on the functioning of the courts, and considerations of public policy."

(*Ford*, *supra,* 61 Cal.4th at p. 287.) *Ford* noted that "courts may decline to recognize estoppel in narrow circumstances" where "allowing a deviation from the law in a particular case would cause confusion in the processing of cases by different litigants or when it would thwart public policy." (*Id.* at p. 289.) For example, as described in *Ford,* at page 289, "in *People v. Blakeman* (1959) 170 Cal.App.2d 596, the Court of Appeal declined to estop a defendant probationer from challenging a banishment condition, even though he himself had proposed the banishment, because such a condition was proscribed by the fundamental policy that one political division not be allowed to 'dump' undesirable persons on another."

CintoDeLeon argues that balancing the equities weighs against estoppel because applying the doctrine in this case would "vitiate the legislative intent that probation orders be final unless there is a change in circumstances." We do not agree. First, the *legislation* discussed in the authorities CintoDeLeon cites, *Cookson, supra,* 54 Cal.3d at page 1095, and *People v. Medeiros* (1994) 25 Cal.App.4th 1260, 1263, did not directly address the policy he relies on. Rather, both cases discussed caselaw establishing that probation may not be modified absent a change in circumstances (*Cookson,* at p. 1095; *Medeiros,* at p. 1263); the legislative policy they discussed was limiting revocation of probation for nonpayment of restitution (*Cookson,* at pp. 1095-1097 [upholding extension of probation due to defendant's failure to fully pay restitution]; *Medeiros,* at pp. 1263-1268 [reversing imposition of second term of probation because defendant unable to fully pay restitution]). *Cookson* also rejected the contention that the governing legislation *only* allowed modification of probation after a violation of probation conditions, holding that a change of circumstances was sufficient. (*Cookson,* at pp. 1098, 1100.)

11

More significantly, the policy CintoDeLeon relies on in arguing the equities is not the sort of fundamental public policy *Ford* discussed in describing the "narrow circumstances" in which estoppel should not be applied.  The cases *Ford* discussed refused to apply estoppel to uphold court orders that were impermissible under any circumstances—banishment as a condition of probation (*People v. Blakeman, supra,* 170 Cal.App.2d at p. 598), allowance of privileges " 'exceeding those granted by the Legislature or the Governor's pardon, and not available to any other similarly situated person.' " (*Ford, supra,* 61 Cal.4th at p. 289, quoting *People v. Mendez* (1991) 234 Cal.App.3d 1773, 1784.)  In such situations, application of estoppel was inappropriate even where the party sought to be estopped expressly stipulated to (*Mendez,* at p. 1784 [stipulation of district attorney]) or affirmatively requested (*Blakeman,* at p. 598 [request of defendant]) the order.  In *Ford,* by contrast, estopping the defendant from challenging the court's jurisdiction to award full restitution pursuant to a schedule he had agreed to "advance[d] the goals of the probation system, and further[ed] the objective of ensuring victims of crime receive the restitution they are due." (*Ford,* at p. 290.)

Modification of probation to impose additional *permissible* conditions, with the express or implied consent of the defendant, does not violate any fundamental policy or risk "confusion in the processing of cases by different litigants." (*Ford, supra,* 61 Cal.4th at p. 287.)  Accordingly, if the additional conditions imposed in the present case would otherwise be a valid exercise of the trial court's discretion, we see no impediment to upholding them in the circumstances of this case.

12

## II.

### *Two Conditions of Probation Require Modification.*

"[A] sentencing court has 'broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1.' [Citation.] But such discretion is not unlimited: '[A] condition of probation must serve a purpose specified in the statute,' and conditions regulating noncriminal conduct must be ' "reasonably related to the crime of which the defendant was convicted or to future criminality." ' [Citation.]" (*People v. Moran* (2016) 1 Cal.5th 398, 403.) Probation conditions that restrict the exercise of constitutional rights must be "narrowly drawn to serve the important interests of public safety and rehabilitation" and "specifically tailored to the individual probationer." (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1084.) "While we generally review the court's imposition of a probation condition for abuse of discretion, we review constitutional challenges to probation conditions de novo." (*In re Malik J.* (2015) 240 Cal.App.4th 896, 901.)

### A. The Condition Prohibiting Going to "Places Where Minors Congregate" Is Vague.

The first condition CintoDeLeon challenges, No. 14, requires him to "[n]ot associate with minors under the age of 18, or go to places where minors congregate unless in the presence of a responsible adult approved by Probation." CintoDeLeon argues this condition is unconstitutionally vague in that it does not provide sufficient clarity as to the meaning of "places where minors congregate."[9]

---

[9] The parties agree that this probation condition implicates CintoDeLeon's constitutional rights, although they identify the rights at stake slightly differently. CintoDeLeon refers to the rights to due process and to travel; the People point to the right to travel and the right to freedom of association.

The void-for-vagueness doctrine, "which derives from the due process concept of fair warning, bars the government from enforcing a provision that 'forbids or requires the doing of an act in terms so vague' that people of 'common intelligence must necessarily guess at its meaning and differ as to its application.' [Citations.]  To withstand a constitutional challenge on the ground of vagueness, a probation condition must be sufficiently definite to inform the probationer what conduct is required or prohibited, and to enable the court to determine whether the probationer has violated the condition." (*People v. Hall* (2017) 2 Cal.5th 494, 500 (*Hall*); *In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*)

CintoDeLeon argues that the requirement to avoid "places where minors congregate" leaves unclear precisely what places come within the prohibition.  He cites a variety of locations that might or might not be included, such as coffee shops, restaurants, public parks, libraries, grocery stores and transit stations.  Defense counsel made this point in the trial court, offering examples of ambiguous locations such as movie theaters and church, where minors might be present, but which are not dedicated to use by minors.

The People maintain the condition is not unconstitutionally vague when read in light of the next condition the trial court imposed, No. 15, which requires that CintoDeLeon "[n]ot loiter, or come within 50 yards of places where children congregate, such as schools, parks, playgrounds, video arcades, and swimming pools, without the permission of the probation officer."  These examples, the People assert, clarify that "places where minors congregate" means places where minors "commonly" congregate.

14

Condition No. 15, which CintoDeLeon does *not* challenge on this appeal, is akin to a probation condition imposed in *People v. Devalle* (1994) 26 Cal.App.4th 869, 878-879 (*Devalle*). The condition in *Devalle* required the defendant to " 'stay away from any places where minor children congregate,' " but was clarified by the trial court's comments that "[t]he obvious places that come to mind are elementary schools, day care, parks. [¶] Stay away from places where young children are around." (*Id.* at p. 878.) *Devalle* found no ambiguity in the condition in light of the examples the trial court included. (*Id.* at p. 879.) Similarly, *United States v. Bee* (9th Cir. 1998) 162 F.3d 1232, 1235 *(Bee)*, upheld a condition of supervised release directing that the defendant " 'not loiter within 100 feet of school yards, parks, playgrounds, arcades, or other places primarily used by children under the age of 18.' "[10]

" '[A] probation condition should not be invalidated as unconstitutionally vague " ' "if any reasonable and practical construction can be given to its language." ' " ' [Citations.]" (*In re Oswaldo R.* (2017) 11 Cal.App.5th 409, 416-417 (*Oswaldo R.*).) But the People's argument that the examples included in condition No. 15 clarify the scope of No. 14 as well is problematic because the inclusion of examples in one of the conditions and not the other suggests the examples only pertain to the condition that includes them. Without the examples, the directive to avoid "places where

---

[10] CintoDeLeon describes the condition in *Bee* as illustrating the reason the conditions in the present case are vague, since the condition in *Bee* clarified its reach by referring only to places "primarily" used by children whereas the condition here, by including any place where children "congregate," could potentially apply anywhere children are present. In our view, as in *Devalle,* the examples included in this condition imply the limitation expressly stated in *Bee,* that the prohibited places are ones primarily or commonly used by minors. This, we assume, is why CintoDeLeon is not challenging condition No. 15.

minors congregate" leaves CintoDeLeon unable to anticipate whether the condition would apply to many locations he might have reason to visit.

The People also argue that CintoDeLeon could not be found to have violated the condition if he "unwittingly went to a place where minors might congregate that is not specifically designated for use by minors." "Revocation of probation typically requires proof that the probation violation was willful." (*Hall, supra,* 2 Cal.5th at p. 498.) "The word 'wilfully' . . . implies that the person knows what he is doing . . . ." (*Ex parte Trombley* (1948) 31 Cal.2d 801, 807; *Hall,* at p. 501.) "[A] probationer cannot be punished for presence, possession, or association without proof of knowledge." (*People v. Moore* (2012) 211 Cal.App.4th 1179, 1186.)

Express recognition of an implicit knowledge requirement would not alone solve the problem CintoDeLeon raises here. His vagueness claim is not that he could unwittingly find himself in a place where minors congregate without knowing it but that he has no way to determine to a " ' "reasonable degree of certainty" ' " (*Hall, supra,* 2 Cal.5th at p. 503) whether a given place is one where minors congregate or would be so viewed by a probation officer or court. That CintoDeLeon could not be found to have violated the condition if he did not *knowingly* go to a "place where minors congregate" would not assist him in determining whether a location such as a movie theater or restaurant would be considered such a place. (See *Oswaldo R., supra,* 11 Cal.App.5th at p. 416 and fn. 6. [noting recognition in *Hall,* at pp. 502-503, and *Sheena K., supra,* 40 Cal.4th at pp. 890-892, that knowledge requirement will not clarify a probation condition that is not adequately defined].)

We agree with CintoDeLeon that the location condition, as presently worded, fails to provide adequate notice of the places he is prohibited from

going. The problem can be solved, however, with clarifying language such as addition of examples like those included in the stay-away condition. So clarified, the condition should further specify that CintoDeLeon must avoid locations where he knows or reasonably should know minors congregate.

## B. The Condition Restricting Relationships with Individuals Who Have Physical Custody of Minors Is Overbroad to the Extent It Applies to All Socialization.

The second condition CintoDeLeon challenges, No. 19, provides, "You may not date, socialize, or form a romantic relationship with any person that has physical custody of a minor unless approved by the probation officer." CintoDeLeon contends this condition, which the People acknowledge implicates his constitutional right of association, must be invalidated as overbroad.[11]

" 'Where a condition of probation requires a waiver of constitutional rights, the condition must be narrowly drawn. To the extent it is overbroad it is not reasonably related to a compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights. [Citation.]' [Citation.]" (*People v. Hackler* (1993) 13 Cal.App.4th 1049, 1058.) "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Sheena K., supra,* 40 Cal.4th at p. 890.) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that

---

[11] CintoDeLeon additionally asserts that the condition implicates his constitutional right to privacy, a point to which the People do not respond but which does not affect our analysis.

perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

CintoDeLeon argues the condition here is overbroad because it prohibits a wide range of legal behavior, his psychological evaluation concluded he was at low to moderate risk for reoffense,[12] and the facts did not suggest any necessity for prohibiting romantic relationships or socializing with parents of minor children. He urges that prohibiting social relationships is counterproductive because social support and healthy romantic relationships are important to long term prevention of recidivism.

The People, by contrast, maintain the condition is narrowly drawn to serve the compelling interests of rehabilitation and protecting the public, especially children, in that the condition prevents CintoDeLeon from "being exposed to, having access to, and abusing children again." The People urge that the condition is narrowly tailored to CintoDeLeon, as his present offense resulted from having exposure and access to his niece because she was living with him and his wife, who had custody of the child.[13]

_____

[12] According to the evaluation, CintoDeLeon scored as above average for reoffense on one actuarial instrument and on another as average. The evaluator stated the information in this case did not suggest a diagnosis of pedophilia and, upon consideration of risk factors related to sexual functioning and antisocial and/or criminologic functioning, concluded CintoDeLeon was "probably at Low-Moderate risk to sexually re-offend."

[13] The People make a point of detailing CintoDeLeon's "lengthy history of committing crimes," citing the psychological evaluation report's description of 17 arrests and 2 prior convictions between 2011 and 2022. The report states that most of the arrests were for "automobile theft, receiving stolen property, driving on a suspended license, disturbing the peace, driving while under the influence of alcohol, and various codes related to the possession of substances[,]" as well as one arrest for assault and one for battery. The report does not specify what offenses CintoDeLeon was convicted of. We fail

Given the circumstances of the offense, it was not unreasonable for the trial court to be concerned about CintoDeLeon gaining access to another minor through his connection to the minor's parent. Prohibiting all socialization with anyone having physical custody of a minor absent approval of the probation officer, however, is an extremely far-reaching restriction. In *U.S. v. Wolf Child* (9th Cir. 2012) 699 F.3d 1082, the Ninth Circuit observed that a probation condition prohibiting the defendant from dating or socializing with anyone who had children under age 18 without prior consent of the probation officer precluded him from establishing social relationships with an "enormous" category and "vast" number of people, potentially including family members, friends, neighbors, employers, coworkers, support group sponsors and spiritual leaders. (*Id.* at pp. 1100-1101.) The court commented, "It is hard to imagine how [defendant] would be able to develop friendships, maintain meaningful relationships with others, remain employed, or in any way lead a normal life" while this restriction was in effect. (*Id.* at p. 1101.) We share these concerns.[14] The condition in the present case is *not* narrowly drawn: As currently framed, it applies to *any* socialization, however casual or minimal, regardless of whether CintoDeLeon in fact has any contact with the children of the person with whom he

to see how this history bears on whether a probation condition restricting CintoDeLeon's formation of romantic relationships is overbroad.

[14] We recognize that the condition in *U.S. v. Wolf Child* was particularly problematic because there was no evidence in that case that the defendant had ever "used a relationship with an adult to gain access to the adult's child. (*Wolf Child, supra,* 699 F.3d at p. 1101.) Additionally, that case involved a condition of supervised release that would last for 10 years (*ibid.*), considerably longer than the two-year probation period here. These distinctions do not alter the force of the Ninth Circuit's reasoning regarding the expansive reach of the prohibition against all socialization with any person having physical custody of a child.

socializes.  Furthermore, casual socialization is likely to be so frequent that obtaining prior approval from the probation officer would be impractical. This aspect of the probation condition impinges on CintoDeLeon's constitutional right to freedom of association far more broadly than necessary to serve the state's interests in rehabilitation and public safety.  The condition must be modified to delete or substantially limit the reach of the probation against "socialization" with individuals who have physical custody of minors.  For example, the court might prohibit CintoDeLeon from being present in the homes of friends or acquaintances who have minor children at home, or at gatherings with friends or acquaintances where minor children are present, absent prior disclosure of his conviction for sexual abuse of a child.

The condition's prohibition of dating and forming romantic attachments, in our view, is considerably less problematic.  There is a more direct connection with CintoDeLeon's offense, since it was his wife's custody of the child that provided CintoDeLeon with the opportunity to commit the offense, and romantic relationships can be expected to more readily include contact between one's children and one's romantic partner.  Also, the restriction can be expected to impact far fewer relationships than a restriction on all socializing.

In urging the significance of social relationships, CintoDeLeon draws on courts' recognition of the fundamental constitutional right to marriage. (*Obergefell v. Hodges* (2015) 576 U.S. 644, 664; *Loving v. Virginia* (1967) 388 U.S. 1, 12.)  Although the probation condition at issue here does not expressly restrict CintoDeLeon's right to marry, he urges that marriages often arise from friendships and other social relationships.  CintoDeLeon points out that *People v. Moses* (2011) 199 Cal.App.4th 374, 378-379, held a

20

probation condition requiring that the defendant "not date or marry" anyone with minor children violated the right to marry and had to be modified by striking the words "or marry." Although not addressed in the opinion, however, this holding left in place the prohibition against *dating* anyone with minor children.[15]

In the circumstances of this case, the restriction on dating or forming romantic relationships serves "the important interests of public safety and rehabilitation" and is "specifically tailored to the individual probationer." (*In re Babak S., supra,* 18 Cal.App.4th 1077, 1084.) Further, the condition does not absolutely forbid dating or forming a romantic relationship with a person who has physical custody of a child; it allows for such a relationship with the approval of the probation officer. We "presume a probation officer will not withhold approval for irrational or capricious reasons." (*People v. Stapleton* (2017) 9 Cal.App.5th 989, 996 (*Stapleton*); *People v. Olguin* (2008) 45 Cal.4th 375, 383 (*Olguin*).) "A probation officer cannot issue directives that are not reasonable in light of the authority granted to the officer by the court." (*Stapleton,* at p. 996.) Also, the probation period here is two years, which is not so long a period as to render the restriction oppressive.

Finally, " 'probation is a privilege and not a right, and that adult probationers, in preference to incarceration, validly may consent to limitations upon their constitutional rights . . . .' " (*Stapleton, supra,* 9 Cal.App.5th at p. 997, quoting *Olguin, supra,* 45 Cal.4th at p. 384.) " 'If a defendant believes the conditions of probation are more onerous than the

---

[15] As described by the court, the defendant in *People v. Moses* specifically challenged the portion of the probation condition referring to marriage. (*Moses, supra,* 199 Cal.App.4th at p. 378.)

21

potential sentence, he or she may refuse probation and choose to serve the sentence.' " (*Stapleton*, at p. 997, quoting *Olguin,* at p. 379.)

## III.

### *The Sentencing Minute Order Must Be Corrected with Respect to Sexual Offender Registration.*

Pursuant to legislation that became effective in 2021, section 290 provides for a three-tier registry for sex offenders convicted in adult court: Those in tier one must register for a minimum of 10 years, those in tier two must register for 20 years and those in tier three must register for life. (*Legg v. Department of Justice* (2022) 81 Cal.App.5th 504, 509; § 290, subd. (d); Stats. 2017, ch. 541, § 2.5, subd. (d).) An offender's tier is determined by the offense requiring registration. (§ 290, subd. (d).)

CintoDeLeon's section 288, subdivision (a) conviction makes him a tier-two offender and therefore subject to the minimum 20-year registration requirement. (§ 290, subd. (d)(2)(A); *Legg v. Department of Justice, supra,* 81 Cal.App.5th at p. 509.) His change of plea form, however, erroneously states, "Lifetime Registration per [section] 290." The minute order for the September 25 sentencing hearing does not mention section 290 and the minute order for the October 18 hearing includes the requirement to register pursuant to section 290 but does not specify a tier. CintoDeLeon seeks amendment of the minute order to reflect that he is a tier-two offender, so as to avoid the possibility of future confusion. The People agree that CintoDeLeon's conviction dictates his tier-two status and do not oppose his proposed amendment. We agree the amendment is appropriate and direct the trial court to amend its minute order to state that CintoDeLeon is required to register pursuant to section 290 as a tier-two offender.

## DISPOSITION

The matter is remanded to the trial court.

On remand, the trial court shall modify probation condition No. 14 to clarify the meaning of "places minors congregate" as discussed in this opinion.

The trial court shall modify probation condition No. 19 by striking or substantially limiting the reach of the requirement that CintoDeLeon not "socialize" with individuals who have physical custody of minors consistent with this opinion.

The trial court shall amend its minute order to specify that CintoDeLeon is required to register pursuant to section 290 as a tier-two offender.

In all other respects, the judgment is affirmed.

23

_____

                                    STEWART, P. J.


We concur.


_____

MILLER, J.


_____

DESAUTELS, J.


*People v. CintoDeLeon* (A169193)